[No. S119294. Jan. 6, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS LOPEZ, Defendant and Appellant.

## COUNSEL

Joseph Shipp, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Donald E. De Nicola, Margaret E. Maxwell and Jeffrey B. Kahan, Deputy Attorneys General, for Plaintiff and Respondent.

David La Bahn; Steve Cooley, District Attorney (Los Angeles), Patrick D. Moran and Brent Riggs, Deputy District Attorneys, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.—** ■ Penal Code section 186.22, subdivision (b) establishes alternative methods for punishing felons whose crimes were committed for the benefit of a criminal street gang. Section 186.22, subdivision (b)(1)(C) (section 186.22(b)(1)(C)) imposes a 10-year enhancement when such a defendant commits a violent felony. Section 186.22(b)(1)(C) does not apply, however, where the violent felony is "punishable by imprisonment in the state prison for life." (Pen. Code, § 186.22, subd. (b)(5).) Instead, section 186.22, subdivision (b)(5) (section 186.22(b)(5)) applies and imposes a minimum term of 15 years before the defendant may be considered for parole.

■ In this case, we must decide whether a gang-related first degree murder, which is punishable by a term of 25 years to life, carries an additional 10-year enhancement under Penal Code section 186.22(b)(1)(C) or, alternatively, a 15-year minimum parole eligibility term under section 186.22(b)(5). For the reasons stated below, we conclude that first degree murder is a violent felony that is punishable by imprisonment in the state prison for life and therefore is not subject to a 10-year enhancement under section 186.22(b)(1)(C).

BACKGROUND

On April 25, 2000, defendant shot and killed a rival gang member outside a Pizza Hut at the intersection of Florence and Figueroa in Los Angeles. A jury convicted defendant of first degree murder (Pen. Code, § 187)[1] and found that defendant had committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)) and that he had personally used and intentionally discharged a firearm to commit the murder (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b)–(d)). The trial court sentenced defendant to 25 years to life in state prison for the murder and 25 years to life for the firearm use, both consecutive to a 10-year criminal street gang enhancement under section 186.22(b)(1)(C).

The Court of Appeal recalculated defendant's presentence custody credits but otherwise affirmed the judgment, including the 10-year enhancement under section 186.22(b)(1)(C). Because the Courts of Appeal have divided over the application of the 10-year enhancement in murder cases (see *People v. Montes* (2003) 31 Cal.4th 350, 361, fn. 14 [2 Cal.Rptr.3d 621, 73 P.3d 489]), we granted review of the following issue: Is a defendant who is convicted of first degree murder with a finding that the crime was committed for the benefit of a criminal street gang within the meaning of Penal Code section 186.22 subject to an enhancement of 10 years under section 186.22(b)(1)(C) or, alternatively, a minimum parole eligibility term of 15 years under section 186.22(b)(5)?

DISCUSSION

Section 186.22 was enacted in 1988 as part of the California Street Terrorism Enforcement and Prevention Act (STEP Act), section 186.20 et seq. As originally enacted, former section 186.22, subdivision (b) provided that "[a]ny person who is convicted of a felony . . . which is committed for the benefit of . . . any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished in the following manner: [¶] . . . [¶] (2) Except as provided in paragraph (3), any person who violates this subdivision in the commission of a felony shall . . . in addition and consecutive to the punishment prescribed for the felony . . . be punished by an additional term of one, two, or three years at the court's discretion. . . . [¶] (3) Any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." (Stats. 1988, ch. 1256, § 1, p. 4180.)

Over the years, the statute has been amended and reenacted, most significantly on March 7, 2000, when California voters passed Proposition 21, the

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

Gang Violence and Juvenile Crime Prevention Act of 1998, which, among other things, increased the penalties in former section 186.22, subdivision (b)(2) and added a new exception to that provision's opening clause. (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 4, pp. 119–120 (Ballot Pamphlet).) The provisions quoted above were renumbered but otherwise experienced no substantive change. After subsequent nonsubstantive changes, section 186.22, subdivision (b)(1) now provides: "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of . . . any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony . . . be punished as follows: [¶] . . . [¶] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." Section 186.22, former subdivision (b)(3) was renumbered as subdivision (b)(5) and now provides: "Except as provided in paragraph (4), any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served."

■ The question presented here is whether a first degree murder committed for the benefit of a gang is subject to the 10-year enhancement in section 186.22(b)(1)(C) or whether such a murder falls within that subdivision's excepting clause and is governed instead by the 15-year minimum parole eligibility term in section 186.22(b)(5). In interpreting a voter initiative, we apply the same principles that govern our construction of a statute. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].) We turn first to the statutory language, giving the words their ordinary meaning. (*Id.* at p. 901.) If the statutory language is not ambiguous, then the plain meaning of the language governs. (*People v. Montes supra*, 31 Cal.4th at p. 356.) If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved. (*Ibid.*; *Robert L., supra*, 30 Cal.4th at p. 901.)

Defendant contends that the statutory language is plain and its meaning unmistakable. He begins with section 186.22(b)(5), which applies when the felony is "punishable by imprisonment in the state prison for life." In his view, first degree murder, which is punishable by "imprisonment in the state prison for a term of 25 years to life" (§ 190, subd. (a)), is such an offense. In support, he cites *People v. Johnson* (2003) 109 Cal.App.4th 1230, 1238 [135 Cal.Rptr.2d 848], *People v. Harper* (2003) 109 Cal.App.4th 520, 525 [135 Cal.Rptr.2d 120], and *People v. Ortiz* (1997) 57 Cal.App.4th 480, 485–486 [67 Cal.Rptr.2d 126], all of which hold the statutory language is plain and

unambiguous and all of which refuse to impose the 10-year gang enhancement for the offense of murder.

The People, on the other hand, contend that the phrase "punishable by imprisonment . . . for life" in section 186.22(b)(5) is ambiguous in that it could apply to all life terms (including terms of years to life), as defendant contends, or merely "straight" life terms, which require only a minimum of seven years of incarceration before a defendant becomes eligible for parole (§ 3046). The Attorney General claims that the statutory context, history, and practical consequences of defendant's construction compel a conclusion that section 186.22(b)(5) applies only to straight life terms and therefore does not apply to first or second degree murder. Amicus curiae California District Attorneys Association (CDAA) concedes that section 186.22(b)(5) could apply to a term of years to life, but only as long as the minimum term is less than 15 years, and therefore does not apply to first or second degree murder.

■ In our view, defendant has the better of the argument. In *People v. Yates* (1983) 34 Cal.3d 644 [194 Cal.Rptr. 765, 669 P.2d 1], we construed similar language in Penal Code former section 1070, subdivision (a), which then provided that " '[i]f the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to 26 and the state to 26 peremptory challenges.' " (*Yates, supra,* 34 Cal.3d at p. 646.) We held that " 'punishable . . . with imprisonment in the state prison for life' " in section 1070 included both a straight life term (as in section 3046) as well as a term of years to life that was at least equally severe. (*Yates, supra,* 34 Cal.3d at p. 647; see also *People v. Smith* (1984) 35 Cal.3d 798, 808–809 [201 Cal.Rptr. 311, 678 P.2d 886].) Virtually identical language—i.e., "punishable by imprisonment in the state prison for life"— appears in section 186.22(b)(5). " 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*In re Jeanice D.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr. 455, 617 P.2d 1087].) It therefore appears that the Legislature intended section 186.22(b)(5) to encompass both a straight life term as well a term expressed as years to life (other than those enumerated in subdivision (b)(4)) and therefore intended to exempt those crimes from the 10-year enhancement in subdivision (b)(1)(C). (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 327 [109 Cal.Rptr.2d 851, 27 P.3d 739].)

■ The Attorney General's contention that an ambiguity was created by Proposition 21's use of the word "indeterminate" in section 186.22, subdivision (b)(4) is unpersuasive. New subdivision (b)(4) states that a defendant

who is convicted of specified felonies "shall . . . be sentenced to an *indeterminate* term of life imprisonment with a minimum term of the indeterminate sentence calculated" as provided. (Italics added.) The Attorney General reasons that section 186.22(b)(5), which omits the word "indeterminate," thereby meant to exclude punishments expressed as a term of years to life. Although our case law has struggled in the past over whether straight life sentences were "determinate" or "indeterminate" (*People v. Felix* (2000) 22 Cal.4th 651, 657–659 [94 Cal.Rptr.2d 54, 995 P.2d 186] [citing cases]), that debate was effectively at an end by 2000, when the voters enacted Proposition 21. Our contemporaneous case law described a straight life sentence as "indeterminate" (*People v. Jefferson* (1999) 21 Cal.4th 86, 90 [86 Cal.Rptr.2d 893, 980 P.2d 441]; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 462, fn. 14 [279 Cal.Rptr. 834, 807 P.2d 1063]); Court of Appeal opinions in that period likewise "generally described a life sentence as indeterminate" (*People v. Felix, supra,* 22 Cal.4th at p. 658 [citing cases]); and "[t]he drafters of the California Rules of Court also considered a life sentence indeterminate." (*Ibid.*) It thus seems exceedingly unlikely that the voters, by using the word "indeterminate" in new subdivision (b)(4), had intended to alter the meaning of subdivision (b)(5)—which was left substantively unchanged—so that it applied only to "determinate" life terms. Indeed, "[w]here a voter initiative contains a provision that is identical to a provision previously enacted by the Legislature, in the absence of an indication of a contrary intent, we infer that the voters intended the provision to have the same meaning as the provision drafted by the Legislature. [Citation.] Because there is no evidence of a contrary intent here, we infer that the voters intended section 186.22(b)(5) to have the same meaning as the identically worded provision drafted by the Legislature in 1988." (*People v. Montes, supra,* 31 Cal.4th at pp. 355–356, fn. omitted.)[2]

Even if we were to find an ambiguity, however, the People have not identified anything to suggest the Legislature or the voters impliedly intended to exclude first or second degree murder from the ambit of section 186.22(b)(5). The Attorney General and amicus curiae focus mainly on the

[2] We also note that in 1988, when the Legislature enacted the STEP Act, it had already amended section 3046 to include both straight life terms and terms of years to life, such as the punishment for murder. (Stats. 1988, ch. 214, § 1, p. 831; see *People v. Jenkins* (1995) 10 Cal.4th 234, 251 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) The People thus fail to offer any evidence that the voters or the Legislature viewed the two types of life terms as so fundamentally distinct that section 186.22(b)(5) (or its predecessors) must be construed to reflect this hypothesized (but unstated) distinction. And, inasmuch as the 10-year enhancement does not apply to the indeterminate life terms specified in section 186.22, subdivision (b)(4), even when the minimum term exceeds 15 years, it is neither absurd nor anomalous to conclude that the enhancement likewise does not apply to the indeterminate life terms included in subdivision (b)(5). As defendant observes, "[t]here is no indication voters intended a different result as regards the determinate enhancement depending . . . on which particular law . . . is applied to reach the minimum term of 15 years or more for a life crime."

fact that defendant's construction of section 186.22(b)(5), which imposes a minimum parole eligibility term of 15 years, will have no practical effect for first degree murderers, who now have a minimum parole eligibility term of 25 years (§ 190, subds. (a), (e)), or for second degree murderers, who now have a minimum parole eligibility term of 15 years (*ibid.*). Yet Proposition 21 recognized that not all of its provisions necessarily established the greatest possible punishment. Indeed, the initiative itself stated that "if any provision in this act conflicts with another section of law which provides for a greater penalty or longer period of imprisonment that the latter provision shall apply, pursuant to Section 654 of the Penal Code." (Ballot Pamp., *supra*, text of Prop. 21, § 37, p. 131.) Thus, the fact that section 190 fixes a parole eligibility date equal to or greater than that provided by section 186.22(b)(5) is neither an absurdity nor an anomaly but rather the type of contingency contemplated by section 37 of the initiative. As that section provides (and as defendant concedes), the greater penalty set forth in section 190—i.e., 25 years to life—is the proper punishment for defendant's first degree murder conviction. The true finding under section 186.22(b)(5), which provides for a lower minimum term, "is a factor that may be considered by the Board of Prison Terms when determining a defendant's release date, even if it does not extend the minimum parole date per se." (*People v. Johnson, supra,* 109 Cal.App.4th at p. 1238.)

The Attorney General also cites one portion of the proponents' argument in favor of the initiative, which asked, "if a violent gang member believes the worst punishment he might receive for a gang-ordered murder is incarceration at the California Youth Authority until age 25, will that stop him from taking a life?" and promised that "Proposition 21 ends the 'slap on the wrist' of current law by imposing real consequences for GANG MEMBERS, RAPISTS AND MURDERERS who cannot be reached through prevention or education." (Ballot Pamp., *supra*, argument in favor of Prop. 21, p. 48.) But the voters' desire to end the "slap on the wrist" does not compel a conclusion that a 10-year enhancement must be added to a term of 25 years to life. Rather, the initiative sought to impose real consequences by permitting the People to file charges of murder and specified sex offenses against juveniles 14 years of age or older directly in criminal court, without a finding of unfitness by the juvenile court (see Welf. & Inst. Code, § 602, subd. (b)), and by adding gang-related murders to the list of special circumstances authorizing imposition of the death penalty or life imprisonment without the possibility of parole (Pen. Code, § 190.2, subd. (a)(22)). As CDAA points out, the text of Proposition 21 declares that "[g]ang-related felonies should result in severe penalties. Life without the possibility of parole or death should be available for murderers who kill as part of any gang-related activity." (Ballot

Pamp., *supra*, text of Prop. 21, § 2, subd. (h), p. 119.) Our construction of section 186.22(b)(5) in no way narrows the People's options with respect to these penalties.

The more relevant legislative history, in our view, is that surrounding the enactment of the STEP Act in 1988, which stated repeatedly that section 186.22, former subdivision (b)(3) (now subdivision (b)(5)) applied to "any life prison term." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1555 (1987–1988 Reg. Sess.) as amended June 23, 1987, p. 2; Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 2013 (1987–1988 Reg. Sess.) as amended Sept. 1, 1987, p. 2; see also Assem. Com. on Ways & Means, Analysis of Assem. Bill No. 2013 (1987–1988 Reg. Sess.) as amended Aug. 18, 1987 ["any life sentence"].) Nothing in these materials suggests that section 186.22(b)(5) was limited only to straight life terms or that it excluded the crime of murder.

The People's proffered interpretation is also inconsistent with a 1988 enrolled bill report written by the Youth and Adult Correctional Agency, which analyzed the financial impact of the provision: " 'This proposed provision relating to life terms [former section 186.22, subdivision (b)(3), now section 186.22(b)(5)] would apply to all lifers (except life without possibility of parole). This would result in these lifers having their first parole hearing delayed, except for first degree murderers with a sentence of 25 years to life.' " (*People v. Montes, supra,* 31 Cal.4th at p. 357, quoting Cal. Youth & Adult Correctional Agency, Enrolled Bill Rep. on Assem. Bill No. 2013 (1987–1988 Reg. Sess.) prepared for Governor Deukmejian (Sept. 1, 1988) p. 2.) An attachment to that report listing the then-current and proposed minimum eligible parole dates (MEPD) for life prisoners explained that the new law would increase the MEPD for second degree murderers from 10 years to 15 years but would have no effect on the MEPD for first degree murders, which was then 16 years eight months. (*Montes, supra,* 31 Cal.4th at p. 358, fn. 10.)

■ In sum, at the time the STEP Act was enacted, the predecessor to section 186.22(b)(5) was understood to apply to *all* lifers, except those sentenced to life without the possibility of parole. Contrary to the People's naked assertion, we find no indication that the voter-approved amendment in June 1998 to section 190, subdivision (e), which eliminated postsentence credits and thereby increased the MEPD for first and second degree murderers, impliedly altered the meaning of "a felony punishable in the state prison for life" in that predecessor provision. (See Ballot Pamp., Primary Elec. (June 2, 1998) Official Title and Summary of Prop. 222, p. 98.) We likewise find no indication that Proposition 21, which reenacted the predecessor provision without substantive change and renumbered it as subdivision (b)(5), impliedly

restricted its reach. Finally, we find no support for CDAA's contention that the Legislature or the voters intended the applicability of subdivision (b)(1)(C) and subdivision (b)(5) to "shift, depending upon the current minimum parole eligibility term for murder, and whether or not section 3046 can have an effect." We find instead that the plain language of section 186.22(b)(5) governs and therefore conclude that the Court of Appeal erred in applying the 10-year gang enhancement to defendant's first degree murder conviction.

### Disposition

The judgment of the Court of Appeal is affirmed but the sentence must be modified to delete the 10-year gang enhancement imposed under Penal Code section 186.22(b)(1)(C). The cause is remanded to the Court of Appeal for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.