Filed 5/23/14  P. v. Wilson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KAYLIN DEJUAN WILSON,<br><br>    Defendant and Appellant. | G049201<br><br>(Super. Ct. No. FSB1000566)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of  San Bernardino County, Bryan Foster, Judge.  Affirmed as modified.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Kaylin Dejuan Wilson guilty of first degree murder and found the related gang and gun sentencing enhancement allegations were true. After denying his motion for a new trial, the trial court sentenced him to an aggregate term of 50 years to life, consisting of 25 years to life for the murder, plus consecutive terms of 25 years to life for one of the gun enhancements and 10 years for the gang enhancement.

Wilson contends the trial court abused its discretion by denying his new trial motion. He also claims the trial court erroneously imposed the 10-year sentence for the gang enhancement under Penal Code[1] section 186.22, subdivision (b)(1)(C), instead of the 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5). The Attorney General concedes the sentencing error, and we modify the judgment accordingly. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

One February night in 2010, Wilson shot and killed Christopher Johnson at a party in the Pinehurst condominium projects. Wilson is a member of one criminal street gang, and Johnson was a member of another. The murder was committed for the benefit of, at the direction of or in association with Wilson's gang.

During the trial, after the prosecution rested its case in chief, and outside the presence of the jury, defense counsel, Ron Powell, stated, "it's been my recommendation and I'm hoping my client will follow it that we will rest and rely on the state of the evidence." The trial court told Wilson he had the right to testify on his own behalf and the right to remain silent, and that no one could force him to testify. However, the court also told him that he would be subject to cross-examination by the prosecutor if he decided to testify. The trial court then asked, "Do you want to follow your attorney's advice and not testify or do you wish to exercise your right to testify?" Wilson replied, "Well, right now I still want to talk a little bit about that."

_____

[1] All subsequent statutory references are to the Penal Code.

2

After a brief recess, Powell told the court Wilson would not be testifying. When the court asked Wilson if his attorney had accurately reported the situation, Wilson said he had. The defense then rested its case. The court and counsel discussed other matters for a few minutes, and the court denied the defense motion for acquittal (§ 1118).

At that point, Wilson engaged the trial court in the following colloquy: "[Wilson]: I want to testify, I guess, your Honor. He says it's over. I want to testify. He said it's over. I want to testify. [¶] [Court]: You waived your right. [¶] [Wilson]: It's over? I can't? [¶] [Court]: That's right. You waived your right in open court. Both sides rested. That's the close of evidence."

The following morning, the trial court asked Wilson whether he had changed his mind and wanted to testify, or decided to follow Powell's advice and not testify. Wilson said he wanted to follow his attorney's advice. The trial court replied, "Okay. All right. Just making sure the record is clear on that. [¶] And I should make the record clear that I would have allowed you to testify if you thought you needed to, okay. All right. Let's get the jury in."

After the verdict and before sentencing, Wilson filed a motion for new trial on ineffective assistance of counsel grounds. The trial court appointed Janice Kuhr to represent him on the motion. The motion asserted that Wilson had been deprived of the effective assistance of counsel because Powell had refused to allow Wilson to testify, and Powell had threatened Wilson by saying that if Wilson testified at trial "that a verdict of guilty would result by 'guarantee[].'" Although Wilson did not explain what his testimony would have been, he sought a new trial so that he could testify "in his OWN WORDS . . . at his own trial."

Wilson submitted a declaration with the motion which said: "During [the] trial, I made several requests of Mr. Powell that I be allowed to testify on my own behalf at such trial. Mr. Powell refused to allow me to testify. He told me that he would 'guarantee' that I would receive a guilty verdict if I were to testify. Therefore, I was

3

intimidated and coerced into silence, and completely prevented from testifying on my own behalf at my own criminal trial. [¶] . . . I believe that, had I been allowed to so testify, a different outcome would have been reached at such trial. I would have testified but for Mr. Powell's threatening words which in fact prevented me from exercising my right to so testify."

Wilson also testified at the hearing on the motion. Wilson claimed he repeatedly told Powell he wanted to testify, both before and during the trial. When Wilson first talked to Powell about testifying, Powell said he would be able to testify. However, when Wilson told Powell he wanted to testify at the close of the prosecution's case, Powell seemed very upset and tried to talk Wilson out of testifying. Wilson testified, "He . . . started to tell me things like, well, look where you are at, you never made a good decision in your life, look at where you are at now, and things like that in that manner. And I, like, then after he says that he's, like, he tells me, like, you go ahead. He said if that's what you want to do. You testify, I'm going to make sure that you get a guilty verdict." Wilson also said Powell was "enraged" when Wilson stated he wished to testify. After Powell said he would ensure Wilson's conviction, Wilson decided to drop the subject. He testified that Powell made him fell threatened and intimidated, and that he believed he had "no choice" but to forgo testifying at trial.

Under cross-examination, Wilson said Powell never explained why it was not a good idea to testify, and they never went over the statements Wilson planned to make, although Wilson said he made Powell aware of certain facts. When the prosecutor attempted to elicit the details of Wilson's conversations with Powell the trial court sustained Kuhr's objection. Ultimately, Wilson testified he knew he had the right to testify, but he felt intimidated by Powell.

Powell also testified at the hearing on the motion. Powell said he and Wilson discussed whether Wilson should testify at trial on several occasions. During those discussions, Powell talked to Wilson about the pitfalls of testifying in his own

4

defense, but he denied ever threatening Wilson. Powell remembered a specific instance that occurred in the presence of his investigator. On this occasion, Powell stated he "tried to put it in the strongest terms I could . . . the best chance we had was with him not testifying, but I guarantee I don't have the ability to guarantee one thing or the other."

Lisa Hart, the defense investigator, testified she was present when Powell had a conversation with Wilson about testifying. According to Hart, Powell explained the pros and cons of Wilson taking the stand, and Powell told Wilson he had the right to testify, that "it was ultimately his right." Hart recalled this discussion lasted 20 or 30 minutes, and at no time did she think Wilson misunderstood what Powell had told him.

At the end of the hearing the trial court ruled, "The testimony I've heard here from Mr. Wilson was that Mr. Powell was adamant that he did not feel that it was in Mr. Wilson's best interest to testify. Mr. Wilson's recollection was to the effect that make sure — or that if Mr. Wilson testified, Mr. Powell indicated he would make sure that he would get a guilty verdict, that he would guarantee that he would get — that he would guarantee — something to the effect that he would guarantee that there would be a guilty verdict in the case. It appears Mr. Wilson took that as a threat to do something, however, it is nothing more than a statement, as far as I can see, a statement that if you testify, I can guarantee you are going to get a guilty verdict, which is a little bit different than a threat. [¶] I can see no rational reason for any defense attorney, especially in a case of this magnitude, to ever make an indication that he was coercing someone into [not] testifying. It appears — There doesn't appear to be any alternative motive for Mr. Powell to have come across with that type of sentiment other than the fact that he believed it was not in Mr. Wilson's best interest to do so and it would be detrimental to his case. If anything, it would be in Mr. Powell's interest to allow Mr. Wilson to testify if, in fact, he felt that the case. [¶] Under the circumstances, it appears it was a strategic decision. Based on that I can find no ineffective assistance of counsel, since that is the basis for the motion for new trial. Motion for new trial is denied."

5

## DISCUSSION

*1. Motion for New Trial*

"""The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."' [Citations.] '"[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background."' [Citation.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Wilson's motion for new trial was based upon Powell's alleged ineffective assistance of counsel. (See *People v. Smith* (1993) 6 Cal.4th 684, 695-696; *People v. Kelley* (1997) 52 Cal.App.4th 568, 579.) A meritorious claim of ineffective assistance of counsel must establish both: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. (*People v. Holt* (1997) 15 Cal.4th 619, 703.)

Wilson claims Powell provided inadequate representation in two respects. First, he claims Powell threatened and coerced Wilson into waiving his right to testify. Second, Wilson claims Powell refused to allow Wilson to testify. Hence, Wilson contends the trial court abused its discretion by denying his motion for a new trial. We disagree.

The trial court did not believe Wilson's testimony that he was threatened and coerced by Powell, and that Powell refused to let him testify. Instead the trial court explicitly found Powell's purported guarantee of a conviction if Wilson testified was "nothing more than a statement." And the trial court implicitly found Powell warned Wilson of the dangers of testifying, but properly left the ultimate decision to Wilson. These factual findings are sufficiently supported by the testimony of Powell and Hart, and by Wilson's own statements to the court during trial, all as described above.

6

Under these circumstances, the trial court properly concluded there was no ineffective assistance of counsel. It follows there was no manifest and unmistakable abuse of discretion by the trial court in denying Wilson's motion for a new trial.

## 2. *Sentencing Error*

The trial court imposed a consecutive 10-year determinate term for the gang enhancement under section 186.22, subdivision (b)(1)(C). Wilson claims that portion of the sentence is unauthorized, and he asserts the trial court should have imposed the 15-year minimum parole eligibility term in section 186.22, subdivision (b)(5) instead. The Attorney General concedes the issue, citing *People v. Lopez* (2005) 34 Cal.4th 1002, 1006. The parties believe the proper remedy is to strike the 10-year enhancement and impose the 15-year minimum parole eligibility requirement. We agree.

## DISPOSITION

The sentence is modified to strike the 10-year gang enhancement imposed under section 186.22, subdivision (b)(1)(C), and impose the 15-year minimum parole eligibility period pursuant to section 186.22, subdivision (b)(5). The clerk of the superior court is directed to correct the abstract of judgment and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

THOMPSON, J.

WE CONCUR:

ARONSON, ACTING P. J.

FYBEL, J.

7