Filed 9/19/14  P. v. Gonzalez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B249702 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA086309) |
| v. | |
| JESUS GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Arthur H. Jean, Jr., Judge.  Affirmed, as modified, and remanded with directions.

Law Offices of Allen G. Weinberg and Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Mary Sanchez, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found defendant and appellant Jesus Gonzalez (defendant) guilty on one count of first degree murder and two counts of attempted murder. On appeal, defendant contends that the prosecutor engaged in misconduct by commenting on defendant's failure to testify in violation of the prohibition against such conduct in *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). In the alternative, defendant argues that if his claim under *Griffin* has been forfeited by his trial counsel's failure to object to the claimed misconduct based on *Griffin*, then he received ineffective assistance of counsel. Defendant also contends that the sentencing minute order and abstract of judgment must be corrected by striking references to a $36,235 fine, stayed gang enhancements, and a $25 administrative screening fee.

The Attorney General contends that defendant's claim of prosecutorial misconduct has been forfeited, that no such misconduct occurred, and any such misconduct was harmless. The Attorney General also agrees that the references to the stayed gang enhancements and the $25 administrative screening fee should be stricken, but argues that the issue concerning the $36,235 fine should be remanded to the trial court for a clarification of the basis of the fine. The Attorney General further contends, and the defendant agrees, that the trial court was required to impose a $40 court security fee and a $30 criminal assessment fee as to each count.

We hold that because the prosecutor did not comment improperly on defendant's failure to testify, he did not violate the prohibition set forth in *Griffin, supra,* 380 U.S. 609 and therefore defendant did not receive ineffective assistance of counsel. We further hold that the judgment should be modified by striking the stayed gang enhancement as to count 1 and by adding that a $40 court security fee and a $30 criminal assessment fee were imposed as to each count. The sentencing minute order and the abstract of judgment should be corrected by striking the references to the $36,235 fine, the stayed gang enhancements, and the $25 administrative screening fee.

2

# FACTUAL BACKGROUND[1]

Defendant and Efran Flores (Flores) were members of the West Side Longos, a Hispanic criminal street gang in Long Beach. On September 14, 2009, two Hispanic males approached three African-American males who had congregated on the stairs to an apartment building in Long Beach. One of the Hispanic males asked, "Where you from?" When one of the African American males responded, "We don't bang," the Hispanic male stated, "Fuck Crabs."[2] One of the Hispanic males then began shooting at the three men on the stairs, wounding two of them and killing the third.

One of the surviving shooting victims identified Flores as the shooter. An investigating detective, who considered Flores and defendant as suspects in the crimes, prepared a flyer with composite pictures that resembled Flores and defendant and posted copies of it in defendant's neighborhood. The detective also went to the home of defendant's girlfriend, Maria Hernandez (Hernandez), and handed a copy of the flyer to her sister. Defendant then came to Hernandez's home, showed her a copy of the flyer, and asked her, "Does this look like me?" After discussing the flyer with her sister, Hernandez told defendant that "the other picture looked like [Flores]." Defendant replied, "Me and the homie Grouchy[3] did it." Defendant then left saying, "I am gone."

During subsequent telephone calls between defendant and Hernandez that were tape recorded by the police, she told defendant, inter alia, to change his appearance and to tell "Grouchy" to "do something with" his eyebrows. She also told defendant to "lose

---

[1]    Because defendant does not challenge the sufficiency of the evidence in support of his conviction and instead raises issues concerning prosecutorial misconduct during argument and his sentence, we briefly summarize the evidence in support of conviction to provide context for the ensuing discussion.

[2]    According to the two surviving African-American shooting victims, "Fuck Crabs" meant "Fuck Crips."

[3]    Hernandez confirmed that defendant and Flores, also known as "Grouchy," were West Side Longos gang members.

3

some weight." Defendant told Hernandez in one of those calls that he was "going to leave" and was heading "south." In a recorded telephone call with his brother, defendant said that he was "gonna go to TJ" because "[t]hey're hot . . . hot after me . . . ." In a telephone call with an unidentified female, defendant stated, "Grouchy is getting really panicky" and "I'm gonna disappear" "for a few months."

A gang expert testified that defendant and Flores were West Side Longos gang members. He opined that the shootings were done for the benefit of the West Side Longos gang.

## PROCEDURAL BACKGROUND

In an information, the Los Angeles County District Attorney charged defendant in count 1 with murder in violation of Penal Code section 187, subdivision (a)[4] and in counts 2 and 3 with attempted murder in violation of sections 664 and 187. The District Attorney alleged as to all three counts, inter alia, that a principal personally used a firearm within the meaning of section 12022.53, subdivisions (d) and (e)(1). The District Attorney further alleged that the crimes were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C).

Following trial, the jury found defendant guilty of first degree murder on count 1 and guilty of attempted, willful, deliberate, and premeditated murder on counts 2 and 3. The trial court sentenced defendant to an aggregate term of 130 years to life, comprised of the following: on count 1, a 25-years-to-life term, plus an additional consecutive term of 25 years to life on the gun use allegation under section 12022.53, subdivisions (d) and (e)(1); on count 2, a consecutive 15-years-to-life term, plus an additional consecutive term of 25 years to life on the gun use allegation under section 12022.53, subdivisions (d) and (e)(1); and on count 3, a consecutive 15-years-to-life term, plus an additional consecutive term of 25 years to life on the gun use allegation under section 12022.53,

---

[4] All further statutory references are to the Penal Code unless otherwise indicated.

4

subdivisions (d) and (e)(1).  The trial court ordered defendant to pay restitution and various fees and fines.

## DISCUSSION

### A.      Asserted *Griffin* Error

Defendant contends that the prosecutor committed so-called "*Griffin* error" by commenting during argument about defendant's failure to testify.  According to defendant, that misconduct by the prosecutor violated his rights under the Fifth and Fourteenth Amendments.

#### 1.      Background

During closing arguments, the prosecutor argued, "But what did you hear, the calls that were played?  You heard admissions.  You heard—and the defense never really addressed those calls.  Why is he getting so panicky?  Why is he taking off to TJ?  Why is he going to Ensenada?  Why is he talking about those flyers?  Not just with Maria Hernandez, but with all of those individuals.  That was never even addressed.  [¶]  The [flyers] all over the West side.  'I am gone.  I am leaving.  Me and the Homie did it.'  Grouchy, Efran, Maria Hernandez.  But the calls.  'Who was with you?  Me and Grouchy.  They are after me for a Hot one.'  Where is any kind of explanation for that?"

During his rebuttal argument, the prosecutor stated, "[the d]efense said Detective Johnson, you don't qualify.  You can't participate in this.  The only participants are the people that were involved, the victims in this case.  The [two] surviving victims in this case, . . . .  If you can't believe what they say or if you do believe what they say, defendant, there is reasonable doubt.  [¶]  Then are you to throw out everything that Detective Johnson did on this case?  The flyers that went up?  The investigation that he did on the other suspects or possible suspects?  All the phone calls that were received, all of the phone calls that were reviewed?  All of the phone calls that you heard?  With no explanation from the defense.  Do you throw out that?

5

## 2. *Legal Principles*

"'[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' (*Griffin*[, *supra,*] 380 U.S. [at p.] 615 [14 L.Ed.2d 106, 85 S.Ct. 1229].) The prosecutor's argument cannot refer to the absence of evidence that only the defendant's testimony could provide. (See *People v. Carter* (2005) 36 Cal.4th 1215, 1266 [32 Cal.Rptr.3d 838, 117 P.3d 544].) The rule, however, does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1304 [96 Cal.Rptr.3d 512, 210 P.3d 1119].)" (*People v. Brady* (2010) 50 Cal.4th 547, 565-566; see also *People v. Miller* (1990) 50 Cal.3d 954, 996-997.)

## 3. *Analysis*

Defendant contends that the prosecutor's closing argument based on defendant's statements that "me and homie did it" and "me and Grouchy" violated his Fifth Amendment right against self-incrimination. According to defendant, by telling the jury that the defense had provided no explanation for those statements, the prosecutor was, in effect, commenting on defendant's failure to testify because he was the only person who could have explained the statements.

Defendant's interpretation of the prosecutor's closing argument ignores the context in which the challenged comments by the prosecutor were made. Prior to referring to the "me and homie did it" and "me and Grouchy" statements that defendant made to Hernandez, the prosecutor referenced a variety of other evidence against defendant. When read in that entire context, it is clear that the prosecutor was commenting generally on the failure of the defense to introduce evidence or call logical witnesses to explain the prosecution's strong evidence against defendant. Moreover, defendant was not the only witness who could have addressed the "me and homie did it" and "me and Grouchy" statements to Hernandez. For example, the defense could have called witnesses to testify that Hernandez had a motive to lie about defendant's

6

statements to her or witnesses who could have provided an alibi for defendant, which witness testimony, if believed by the jury, would have impeached Hernandez's testimony. The defense's failure to call such witnesses was therefore a legitimate topic for the prosecutor to address during closing argument to the jury.

Defendant also contends that the prosecutor's rebuttal argument suggested that defendant had failed to explain the various statements he made during the recorded telephone calls. But when the portion of the prosecutor's rebuttal is read in context, it is clear that the prosecutor was not referring to defendant's failure to testify, but rather to the defense's failure to introduce evidence and witness testimony to counter the prosecution's case, including the detective's investigation and the multiple tape recorded telephone conversations between defendant and various other persons, none of whom testified except Hernandez. Even as to defendant's tape recorded statements, defendant failed to introduce any evidence from the other parties to the telephone conversations that might have suggested the statements were taken out of context or did not relate to the specific crimes involved in this case. Under the authorities cited above, the rebuttal argument in issue did not violate defendant's Fifth Amendment rights because it was not reasonably probable that the jury was misled by that argument and drew negative inferences against defendant based on his failure to testify.

### B. Ineffective Assistance of Counsel

As discussed above, the prosecutor did not engage in misconduct during argument, as claimed by defendant. Therefore, his trial counsel's failure to object to the prosecutor's arguments cannot be the basis for a claim of ineffective assistance of counsel.

### C. Sentencing Errors

Defendant contends that the trial court's oral pronouncement of judgment did not mention a $36,235 fine, stayed gang enhancement, or a $25 administrative screening fee, but the sentencing minute order and the abstract of judgment did contain references to

7

those items. According to defendant, because the oral pronouncement of judgment controls over any conflicting written court documents, those three items should be stricken from the minute order and abstract. As discussed, the Attorney General agrees that the references in the minute order and abstract to the stayed gang enhancements and the $25 administrative screening fee should be stricken, but argues that the issue about the $36,235 fine should be remanded to the trial court for clarification.

### 1. Background

At the sentencing hearing, the trial court orally pronounced defendant's sentence as follows: "As to Count 1, defendant is committed to prison for 25 years to life. He is to serve an additional 25 years to life for the 12022.53, [subdivision] (d)(1) [enhancement]. The gang allegation is stayed. [¶] He is to serve an additional and consecutive 15 years to life for Count 2 for wounding David Tripple. He is to serve an additional and consecutive 25 years to life for the 12022.53 [subdivision] (d) [enhancement]. [¶] He is to serve on Count 3, a consecutive 15 years to life for wounding James Gaither, an additional 25 years to life for the 12022.53, [subdivision] (d) [enhancement], a total of 130 years to life. [¶] He is to receive credit for 1,085 days. [¶] $10,000 Penal fine, $10,000 restitution fine, $30, $40 and booking fees to be paid."

The sentencing minute order, however, stated that defendant was to pay a fine of $10,000, a state penalty fund assessment of $26,000, a $40 court operations assessment pursuant to section 1465.8, subdivision (a)(1), a $30 criminal conviction assessment pursuant to Government Code section 70373, and a $25 administrative screening fee pursuant to section 1463.07. The minute order initially stated that the total fine imposed was $36,095. But that amount was then deleted "due to [a] glitch in the computer system" and replaced with a fine of $36,235. The minute order further stated that "court operations and criminal conviction assessments are charged per count" and "the court waives the $30 installment fee." The minute order went on to state that a $40 court operations assessment and a $30 criminal conviction assessment were imposed on counts 2 and 3. In addition, the minute order reflected that the trial court imposed a $10,000

8

restitution fine and a $10,000 parole restitution fine and stayed the gang enhancement as to counts 1, 2, and 3.

The abstract of judgment reflected that the gang enhancement was stayed as to count 1, but did not reflect any gang enhancements as to counts 2 and 3. The abstract also reflected that the trial court imposed a $10,000 restitution fine pursuant to section 1202.4, subdivision (b) and a $10,000 parole restitution fine pursuant to section 1202.45, which was suspended unless parole was revoked. The abstract also reflected a $40 court security fee pursuant to section 1465.8, a $30 criminal conviction assessment pursuant to Government Code section 70373, and a $25 administrative screening fee pursuant to section 1463.07. And the abstract showed that defendant had been ordered to pay a total fine of $36,235.

### 2. $36,235 Fine

Defendant contends that because the trial court's oral pronouncement of sentence did not reference the $36,235 fine that is reflected in the sentencing minute order and abstract of judgment, that fine must be stricken from the minute order and abstract. The Attorney General disagrees, arguing that the issue should be remanded to the trial court for a clarification of the basis of the fine.

We agree with defendant that the oral pronouncement of judgment controls over any conflict in written court documents. (See *People v. Mesa* (1975) 14 Cal.3d 466, 471.) Moreover, because the fine in issue does not appear to be mandatory, but rather a matter of trial court discretion, the failure of the court to orally pronounce it is not jurisdictional error. (See *People v. Walz* (2008) 160 Cal.App.4th 1364, 1369 [if trial court had discretion to impose fine, then the failure to impose it is not jurisdictional but instead involves a discretionary sentencing choice].) The references to the $36,235 fine in the sentencing minute order and the abstract of judgment must therefore be stricken.

### 3. *Stayed Gang Enhancement*

Defendant contends, and the Attorney General agrees, that the stayed gang enhancements referenced in the oral pronouncement of sentencing, the sentencing minute order, and abstract of judgment cannot be stayed, but must be stricken, citing *People v. Lopez* (2005) 34 Cal.4th 1002, 1004 ["a gang-related first degree murder, which is punishable by a term of 25 years to life" is not subject to an additional 10-year enhancement under section 186.22, subdivision (c)(1)(C). Instead, it is subject to a 15-year minimum parole eligibility term under section 186.22, subdivision (b)(5)].)

Defendant was convicted of first degree murder and two counts of willful premeditated attempted murder, and the jury found the gang enhancement alleged under section 186.22, subdivision (b)(1) and the firearm enhancement under section 12022.53, subdivision (e)(1) true as to all three counts. Because the prosecutor conceded that Flores was the shooter, defendant was not subject to a section 186.22, subdivision (b)(1)(C) enhancement in addition to the enhancement imposed under section 12022.53, subdivision (e)(1). *People v. Brookfield* (2009) 47 Cal.4th 583, 590 [when another principal in an offense uses or discharges a firearm but the defendant does not, the defendant is not subject to a gang enhancement in addition to an enhancement imposed under section 12022.53, subdivision (b)(1)].) The references to the stayed gang enhancement in the trial court's oral pronouncement of sentence, as well as in the sentencing minute order and abstract of judgment, must be stricken.

### 4. *$25 Administrative Screening Fee*

Defendant contends, and the Attorney General agrees, that the references in the sentencing minute order and the abstract of judgment to a $25 administrative screening fee must be stricken because defendant was never released on his own recognizance—which is a prerequisite to imposition of that fee under section 1463.07—and because that fee was not mentioned during the oral pronouncement of sentence. Because we agree with the parties, the references to the $25 administrative screening fee must be stricken.

10

### 5. Court Security Fees and Assessments

The Attorney General contends, and defendant agrees, that the trial court was required to impose a $40 court security fee under section 1465.8, subdivision (a)(1) and a $30 criminal conviction assessment under Government Code section 70373 as to each count. Because we agree, the oral pronouncement of judgment, the sentencing minute order, and the abstract of judgment must be amended to reflect that the trial court imposed a total court security fee of $120 and a total criminal conviction assessment of $90.

## DISPOSITION

The judgment of conviction is affirmed and the matter is remanded to the trial court with directions to modify the judgment by striking the reference to the stayed gang enhancement as to count 1 and by adding to defendant's sentence a total court security fee of $120 and a total criminal conviction fee of $90. The sentencing minute order and abstract of judgment should be amended to reflect these modifications and by striking references to the $36,235 fine, the stayed gang enhancements, and the $25 administrative screening fee.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.

We concur:



TURNER, P. J.



MINK, J.*

---

\* Retired Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.