Filed 5/25/16  P. v. Monterrosa CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MACARIO MONTERROSA,<br><br>    Defendant and Appellant. | B264418<br><br>(Los Angeles County<br>Super. Ct. No. NA090077) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed as modified.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Abtin Amir, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Macario Monterrosa appeals from his judgment of conviction for first degree murder (premeditated murder) of Rogelio Alvarado and attempted premeditated murder of Juan B. He contends the court should have instructed the jury on imperfect self-defense. We modify the judgment to correct sentencing errors but otherwise affirm.

## FACTS AND PROCEDURE

Appellant belonged to the "Wilmas" gang in the Wilmington area of Los Angeles. His girlfriend at the time of these events, Lizeth P., also belonged to the Wilmas gang.

On the night of September 17, 2011, victims Juan B. and Alvarado met at a night club with other friends. They stayed until the club closed and then went to Alvarado's home with three others. Alvarado's home was in territory of the Wilmas gang. Alvarado and his friends were drinking beer and socializing in the parking lot of the apartment complex. Around 4:45 a.m., a group of two women and four or five men—including appellant, Lizeth P., and other Wilmas gang members—approached the victims' group.

Appellant walked directly up to Alvarado. Juan B., who was standing next to Alvarado, did not know appellant and had never met him. Juan thought they might fight, based on their body language. He heard appellant speak to Alvarado, but he did not hear what exactly appellant said. He thought appellant asked Alvarado for something. Another witness in Juan and Alvarado's group heard someone ask for beer. Alvarado responded that they did not have any beer. Appellant "hit [Alvarado] fast" approximately two times. Alvarado "bent over and ran." The whole episode was very fast and was over in a few seconds.

Lizeth P. was at appellant's side and heard appellant "arguing about drugs" with the victims. Appellant then "got close" to Alvarado, and appellant and his friends "got violent." She believed appellant stabbed Alvarado because she "felt a bad vibe," and she saw appellant thrust his arm in a stabbing motion toward Alvarado. Alvarado did not try to hit appellant, and, in fact, Lizeth was surprised when appellant stabbed him.

Juan B. watched Alvarado run away and then appellant "hit" Juan as well. The area where appellant hit him felt "hot" and painful. Juan also ran off after that. As appellant and

Lizeth P. walked off, appellant said, "I got him good." Officers contacted appellant later that day and found a screwdriver in his front pocket.

Juan B. went to the hospital, where he was treated for two stab wounds. He required two staples on each. Alvarado also had two stab wounds, one to the right shoulder, and one to the abdomen. The stab to the abdomen perforated his liver and injured the blood vessels of one kidney. He also had some abrasions on his head and arms. The stab wound to Alvarado's abdomen caused his death.

The prosecution's gang expert, Officer Robert Hargrove, testified about the role of respect in the gang culture, among other things. When gang members refer to respect, what they often mean is being feared by the community, rival gangs, or even fellow gang members. If someone has a "smart mouth" or an attitude towards a gang member, the gang member could respond violently if he or she feels disrespected. The response would be more severe if the "disrespect" occurred in front of other members of one's own gang. The gang member would not want to appear weak in front of other members of his or her gang.

The jury found appellant guilty of the premeditated murder of Alvarado and the attempted premeditated murder of Juan B. (Pen. Code, §§ 187, subd. (a), 189, 664.)[1] It also found true that appellant personally used a deadly and dangerous weapon and gang allegations. (§§ 186.22, subd. (b)(1)(C), 12022, subd. (b)(1).) Appellant admitted a prior prison term allegation. (§ 667.5, subd. (b).)

The court sentenced appellant as follows: (1) 25 years to life imprisonment for premeditated murder, plus one year for the weapon enhancement, and a 10-year stayed term for the gang enhancement; (2) a consecutive term of 15 years to life imprisonment for attempted premeditated murder, plus one year for the weapon enhancement, and again the 10-year stayed term for the gang enhancement; and (3) one year for the prior prison term enhancement. Appellant filed a timely notice of appeal.

---

[1] Further undesignated statutory references are to the Penal Code.

**DISCUSSION**

*1. Imperfect Self-defense Instruction*

Appellant contends the court committed reversible error when it refused to instruct the jury on imperfect self-defense. We apply the independent or de novo standard of review to the court's refusal to instruct on imperfect self-defense. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) Having done so, we find no error.

"[A] trial court must instruct on lesser included offenses . . . whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." (*People v. Lewis* (2001) 25 Cal.4th 610, 645.) "Conversely, . . . a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) Similarly, bare speculation is not a sufficient basis on which to require the giving of an instruction on a lesser offense. (*People v. Wilson* (1992) 3 Cal.4th 926, 941.) "'Substantial evidence is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.'" (*People v. Lewis, supra*, at p. 645.)

Imperfect self-defense is a form of voluntary manslaughter and thus is a lesser offense included in the crime of murder. (*People v. Barton* (1995) 12 Cal.4th 186, 200-201.) It is the killing of another in the actual but unreasonable belief that one is in imminent danger of death or great bodily injury. (*In re Christian S.* (1994) 7 Cal.4th 768, 773.) For imperfect self-defense to apply, the defendant must also have honestly believed that lethal force was necessary. (*People v. Uriarte* (1990) 223 Cal.App.3d 192, 197.)

Here, appellant asserts there was substantial evidence to support an imperfect self-defense instruction because Lizeth P. heard arguing over drugs; if a fight did break out, Alvarado's friends could have come to his aid; "tempers were flaring"; and appellant "may have panicked." Appellant's argument is based on bare speculation. The evidence that appellant actually believed he was in imminent danger of death or great bodily injury is so insubstantial as to be nonexistent. Lizeth was the only one who heard arguing. Juan B.

4

heard appellant ask for beer and Alvarado respond that they did not have any, but no argument. Even if we assume appellant and Alvarado argued, the whole episode was over quickly, and there was no fight. Appellant was the aggressor and simply stabbed Alvarado and Juan. He was the gang member, and they were in his gang's territory. There was no indication the victims were gang members. There was no evidence they were armed or threatened appellant. There was no testimony that appellant appeared afraid. After the victims ran off and he was leaving the scene, he bragged that he had gotten them "good." The evidence as a whole did not at all show appellant actually believed the victims presented an imminent danger of death or great bodily injury. The court did not err in refusing to give an imperfect self-defense instruction.

## 2. *Sentencing Errors*

Respondent urges us to correct several sentencing errors. We agree that the abstract of judgment involved a clerical error or an unauthorized sentence in several respects and requires correction. (*People v. Amaya* (2015) 239 Cal.App.4th 379, 385 [courts may correct clerical error at any time]; *People v. Hamed* (2013) 221 Cal.App.4th 928, 941 [unauthorized sentence may be corrected at any time, even when raised for the first time on appeal].)

First, the one-year term for the prior prison term enhancement (§ 667.5, subd. (b)) does not appear on the abstract of judgment at all. This clerical error should be corrected by adding the enhancement to section 3. of the abstract.

Second, the sentence on count two for attempted premeditated murder was unauthorized. In pertinent part, the court gave appellant 15 years to life imprisonment. But according to section 664, subdivision (a), a person guilty of attempted premeditated murder "*shall* be punished by imprisonment in the state prison *for life* with the possibility of parole" (italics added)—not 15 years to life. Thus, the abstract of judgment should show a sentence of life with the possibility of parole on count two.

Third, the 10-year gang enhancement on both counts was unauthorized. When a defendant is convicted of a felony punishable by life imprisonment, the gang enhancement statute provides that the defendant shall not be paroled until a minimum of 15 years has been served. (§ 186.22, subd. (b)(5); *People v. Lopez* (2005) 34 Cal.4th 1002, 1006.) This

5

is true regardless of whether the felony is punishable by "a straight life term" or "a term expressed as years to life." (*People v. Lopez, supra*, at p. 1007.) When this parole limitation applies, the 10-year gang enhancement does *not*. (§ 186.22, subd. (b)(1)(C), (5); *People v. Lopez*, at p. 1004; *People v. Fiu* (2008) 165 Cal.App.4th 360, 390.) Because both counts involved life sentences, the court erred in imposing the 10-year gang enhancement on both counts. These 10-year enhancements should be stricken from the abstract of judgment. While the 15-year parole eligibility term will have no practical effect on count one, because a minimum parole eligibility term of 25 years already applies to premeditated murder (*People v. Lopez, supra*, at p. 1009), the court shall impose a minimum parole eligibility term of 15 years on count two (§ 186.22, subd. (b)(5)).

## DISPOSITION

We modify the judgment to impose a sentence of life with a minimum parole eligibility term of 15 years on count two. In addition, the 10-year terms for the gang enhancement (§ 186.22, subd. (b)(1)(C)) on both counts should be stricken, and the one-year term for the prior prison term enhancement (§ 667.5, subd. (b)) shall be added to the abstract of judgment. The trial court is directed to prepare an amended abstract of judgment consistent with these modifications and forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. As so modified, we affirm the judgment.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

6