Filed 7/25/14  P. v. Morgan CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ANTHONY LLOYD MORGAN,<br><br>     Defendant and Appellant. | B249349<br><br>(Los Angeles County<br>Super. Ct. No. BA395330) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Leslie A. Swain, Judge.  Affirmed with modifications.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Anthony Lloyd Morgan appeals from the judgment entered upon his conviction by jury of first degree murder (Pen. Code, § 187, subd. (a),[1] count 1), and attempted murder (§§ 664, 187, subd. (a), count 2). The jury found true the firearm allegations that appellant personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and did so causing great bodily injury and death (§ 12022.53, subd. (d)). The jury also found that the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C).

The trial court sentenced appellant to a term of 90 years to life in state prison, comprised of 50 years to life on count 1 (25 years to life for murder plus 25 years for the gun-use enhancement), and 40 years to life on count 2 (15 years to life for attempted murder plus 25 years for the gun-use enhancement). The trial court also imposed concurrent 15-year prison terms pursuant to the gang enhancement on both counts. Appellant was awarded 440 days of actual custody credit.

Appellant contends the trial court erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter. Appellant also raises a sentencing error and contends that the trial court failed to award full presentence credit.

We find merit in appellant's sentencing contention and order the judgment modified in accordance with our findings. In all other respects, the judgment is affirmed.

## FACTUAL SUMMARY

**Prosecution Case**

On February 26, 2012, Gregory Atkinson and appellant visited appellant's aunt at 7711 South Broadway in Los Angeles. At approximately 3:35 p.m. they were standing outside by the carport. Atkinson and appellant were approached by two Hispanic males, Irvin Soloache and Mondher Molina. Soloache asked appellant in an aggressive manner "where he was from." According to the gang expert, the question is a common manner of inquiring about gang membership. Appellant replied he was from "Grape Street."

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Atkinson and appellant were approximately four miles outside the territory claimed by the Grape Street gang. Soloache announced he was "18th Street" and demanded that appellant say "18th Street," which appellant did. Appellant appeared irritated and ran off towards a nearby alley.

Soloache approached Atkinson and posed the same question to him. Atkinson was not an active gang member and said, "I don't affiliate." Soloache told Molina to "watch my back" while he confronted Atkinson. Atkinson and Solache removed their shirts and got into a physical altercation by exchanging punches.

After a minute or so appellant returned, coming from the direction of the apartments where his aunt lived. Appellant had his elbow bent and ran past Soloache and Atkinson and out to the street where Molina was. Atkinson heard two or three gunshots. Appellant returned and confronted Soloache. Atkinson heard a gunshot and Solache fell to the ground and ended up in a sitting position. Atkinson backed away towards the street and heard Soloache scream, "No!" Appellant's arm was extended and he shot Soloache a second time. When Atkinson heard the second shot he grabbed his jacket and left. Neither Soloache nor Molina were armed and Atkinson did not hear them threaten appellant.

Los Angeles Police Department (LAPD) Officer Alexander Moran and his partner, Officer Carmona, were on patrol approximately two blocks from the location the shooting took place. Officer Moran found Soloache lying on the ground with a "very severe gunshot wound to his chest area and the head area." Paramedics were unable to revive Soloache and he died at the scene.

LAPD Officer Ryan Mar was responding to the scene of the Soloache shooting when he was flagged down by Molina approximately one block away. Molina had a gunshot wound to his lower right chin and his left cheek. Molina was transported by ambulance to the hospital for treatment.

LAPD Detective David Ross investigated the scene of the shooting and noticed a surveillance video camera under the awning of a nearby business. He obtained the video which contained portions of the shooting incident. The video was played for the jury

during Atkinson's testimony. At the time of the shooting, appellant was wearing a GPS ankle bracelet so that his movements could be tracked by law enforcement. A DVD showing appellant's location on a map–as recorded by the GPS tracking software at one-minute intervals–was played for the jury. The DVD showed that appellant was present at the location of the shooting that day from approximately 2:32 p.m. until 4:27 p.m. On March 20, 2012, Atkinson was interviewed by Detective Ross. He was not shown the video that captured the shooting but described the incident in detail.

LAPD Detective Christian Mrakich testified as an expert on criminal gangs in general, and Grape Street in particular. Grape Street was an African-American criminal street gang with about 1,150 members. Detective Mrakich opined that appellant was a Grape Street member based on the numerous gang tattoos on his body, and the fact that he had announced his gang membership moments before the shooting. Responding to a hypothetical question based on the facts of this case, Detective Mrakich opined that the shootings of Soloache and Molina were committed for the benefit of, in association with, and at the direction of the Grape Street gang.

**Defense Case**

Cynthia Hildreth, appellant's aunt, lived at 7711 3/5 South Broadway in Los Angeles. Appellant visited her every day. She did not keep any weapons in her apartment and she never saw appellant with any weapon. Hildreth was having a conversation with appellant inside her apartment when she heard the gunshots on February 26, 2012. Appellant stayed with her in the apartment and did not leave.

## DISCUSSION

### I. Trial Court's Refusal to Instruct the Jury on Voluntary Manslaughter

Appellant contends the trial court prejudicially erred by failing to instruct the jury on voluntary manslaughter upon sudden provocation or in the heat of passion as a lesser included offense of murder. Appellant maintains that the record contains substantial evidence that appellant's actions "were an angry response to aggressive conduct on Soloache's part." The claim fails because the requested instruction was not supported by substantial evidence.

4

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)" (*People v. Martinez* (2010) 47 Cal.4th 911, 953; accord, *People v. Booker* (2011) 51 Cal.4th 141, 179 (*Booker*).)

"'To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.' (*People v. Blair* [(2005)] 36 Cal.4th [686,] 745, citing *People v. Breverman, supra,* 19 Cal.4th at p. 162.)" (*People v. Burney* (2009) 47 Cal.4th 203, 250.)

"Murder is the unlawful killing of a human being with malice aforethought. (See § 187, subd. (a).) A murder, however, may be reduced to voluntary manslaughter if the victim engaged in provocative conduct that would cause an ordinary person with an average disposition to act rashly or without due deliberation and reflection." (*Booker, supra*, 51 Cal.4th at p. 183, fn. 23.)

Heat of passion has both objective and subjective components. Objectively, the victim's conduct must have been sufficiently provocative to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (See, e.g., *People v. Moye* (2009) 47 Cal.4th 537, 549-550 (*Moye*).) The standard is not the reaction of a "reasonable gang member." (See *People v. Humphrey* (1996) 13 Cal.4th 1073, 1087.)

Subjectively, "the accused must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation. ([*People v.*] *Wickersham* [(1982)] 32 Cal.3d [307,] 327.) 'Heat of passion arises when "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." [Citations.]' (*People v. Barton* [(1995)] 12 Cal.4th [186,] 201.)" (*Moye, supra,* 47 Cal.4th at p. 550.)

5

If the trial court fails in its duty to instruct on a lesser included offense supported by the evidence, the error is one of state law alone. (*People v. Breverman, supra,* 19 Cal.4th 142, 165.) It does not require reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. (*People v. Breverman, supra,* at p. 178; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Defense counsel asked for a voluntary manslaughter instruction based on "heat of passion." The trial court cited the substantial evidence test for giving lesser-included offense instructions. The court stated there was "no evidence" of a physical threat or that either victim used a weapon. The court also pointed out that there was no evidence of appellant's state of mind "other than he walked away" and then "came back at some later time." The trial court declined to give the instruction because there was no evidence in the record to support a heat of passion instruction.

We find there was no evidence to support the subjective component of heat of passion for manslaughter (Soloache), or attempted manslaughter (Molina). Appellant suggests he was provoked to act because he was disrespected by Soloache. Atkinson's testimony, however, precluded any such finding. Soloache may well have disrespected appellant but Atkinson testified that Soloache and Molina were not armed and did not threaten appellant. Appellant did not engage in any physical confrontation with either Molina or Soloache prior to shooting them. Appellant appeared "irritated" by Soloache's disrespect and left the area. The record indicates that appellant and Molina did not even exchange words. Yet, when appellant returned with the gun, he ran past Atkinson and Soloache and pursued Molina and shot him, before returning to confront Soloache. Additionally, there was no direct evidence concerning appellant's subjective mental state. Appellant's defense, if believed, that he was not the shooter and was not there, "[appellant] was in his aunt's apartment and he was talking to his aunt. . . it was impossible for [appellant] to have committed this crime" effectively eliminated any attempted voluntary manslaughter or attempted manslaughter theory.

Nor was the evidence sufficient to meet the objective component for heat of passion manslaughter or attempted manslaughter. Insults or gang-related challenges do

6

not induce sufficient provocation in an *ordinary* person to merit an instruction on voluntary manslaughter. (*People v. Avila* (2009) 46 Cal.4th 680, 706 ["[r]easonable people do not become homicidally enraged" when hearing gang references or challenges].)

In *People v. Manriquez* (2005) 37 Cal.4th 547, the victim called the defendant a derogatory name and repeatedly told him that if he had a weapon, "he should take it out and use it." (*People v. Manriquez, supra,* 37 Cal.4th at p. 586.) The Supreme Court held such taunting statements "plainly were insufficient to cause an average person to become so inflamed as to lose reason and judgment" and held "[t]he trial court properly denied defendant's request for an instruction on voluntary manslaughter based upon the theory of a sudden quarrel or heat of passion." (Ibid.) ""A provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable [person], such passion as reduces an unlawful killing with a deadly weapon to manslaughter.'" [Citation.]" (*People v. Najera* (2006) 138 Cal.App.4th 212, 226 (*Najera*).) In *Najera,* the victim repeatedly called the defendant a derogatory name; the two swore at one another and physically fought. Minutes later, the defendant obtained a knife, approached the victim, and slashed him several times, killing him. (*Najera, supra*, 138 Cal.App.4th at pp. 215-216.) The court found no evidence to support a manslaughter instruction. (*Najera, supra*, at p. 226.)

The applicable test is what an """"ordinarily reasonable person of average disposition"""" would likely do (*People v. Lee* (1999) 20 Cal.4th 47, 59), not what an irrational gang member would likely do. Nothing in the record supports the instruction and, appellant's request was properly denied.

Finally, even if we agreed with appellant and found that the trial court erred by not instructing on voluntary manslaughter and attempted voluntary manslaughter based on heat of passion, we nonetheless would conclude that error was harmless. Under the harmless error test of *Watson, supra,* 46 Cal.2d 818, it is not "reasonably probable" that appellant would have obtained a more favorable outcome at trial had a heat of passion

7

instruction been given. (*Watson, supra*, at p. 836; see also *Moye, supra,* 47 Cal.4th at pp. 557-558.) The jury found the murder of Soloache and the attempted murder of Molina were willful, deliberate, and premeditated acts. With that finding, the jury necessarily resolved against appellant his claim that he acted in the heat of passion. (*People v. Wharton* (1991) 53 Cal.3d 522, 572 [finding of deliberation and premeditation "manifestly inconsistent" with acting in the heat of passion].)

## II.    Sentencing Issues

### A.    Gang Enhancements

Appellant contends and the People agree that the trial court erred in imposing 15-year "terms"–rather than 15-year minimum parole eligibility periods–pursuant to section 186.22, subdivision (b)(5).

On count 1, the trial court imposed a base term of 25 years to life, a consecutive term of 25 years to life pursuant to section 12022.53, subdivision (d), and a "concurrent term" of 15 years to life pursuant to section 186.22, subdivision (b)(5). On count 2, the trial court imposed a base term of "15 years to life," which the court then corrected, stating, "I'm sorry, [count 2] is life in prison with a minimum term of 15 years for the gang enhancement under 186.22(b)(5) . . . ." The court also imposed a consecutive term of 25 years to life pursuant to section 12022.53, subdivision (d). However, the minute order for count 2 and the abstract of judgment both reflect a consecutive term of 15 years to life for the gang enhancement.

Ordinarily, a 10-year term applies to a gang enhancement on a violent felony. (§ 186.22, subd. (b)(1)(C).) But when, as here, the violent felony is punishable by life in prison, the 10-year term does not apply and the life term instead carries a 15-year minimum parole eligibility period. (§ 186.22, subd. (b)(5); *People v. Lopez* (2005) 34 Cal.4th 1002, 1004 (*Lopez*) [first degree murder committed for the benefit of a gang is governed by the 15-year minimum parole eligibility term in section 186.22, subd. (b)(5)]; *People v. Arauz* (2012) 210 Cal.App.4th 1394, 1404-1405 [the 15-year parole eligibility provision of section 186.22, subd. (b)(5) applies to an indeterminate life term for attempted murder].)

Therefore, to the extent the abstract refers to consecutive and concurrent 15-year terms, it must be corrected. The abstract of judgment should be modified to reflect 15-year minimum parole eligibility terms for counts 1 and 2, pursuant to section 186.22, subdivision (b)(5). (*Lopez*, *supra*, 34 Cal.4th at p. 1011.)

## B. Custody Credit

Appellant received 440 days of presentence custody credit. Appellant contends, and the People concede, that he is entitled to one additional day of actual custody credit.

Pursuant to section 2900.5, subdivision (a), a defendant convicted of a felony is entitled to credit against a state prison term for actual time spent in custody before commencement of the prison sentence, including the day of sentencing. (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526 (*Smith*).) Generally, an appellant may not appeal an error in the calculation of presentence custody credit unless the claim is first presented in the trial court, which did not occur here. (§ 1237.1.) However, the Court of Appeal may address a presentence custody credit issue if other claims are also raised on appeal. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1100–1101; *People v. Acosta* (1996) 48 Cal.App.4th 411, 420–421.)

As a general rule, the time credited includes the date of arrest, the date of sentencing, and every day in between. (*Smith, supra*, 211 Cal.App.3d at p. 526 ["Since section 2900.5 speaks in terms of 'days' instead of 'hours,' it is presumed the Legislature intended to treat any partial day as a whole day"].) The probation report states that appellant was arrested on March 20, 2012, and was sentenced on June 3, 2013, a span of 441 days. Because the trial court awarded appellant 440 days of actual custody credit, the abstract of judgment must be amended to reflect 441 days of presentence custody credit.

## DISPOSITION

The judgment of appellant is modified by (1) striking the 15-year enhancement terms imposed pursuant to section 186.22, subdivision (b)(5) and imposing the 15-year minimum parole eligibility requirement under section 186.22, subdivision (b)(5), and (2) amending the abstract of judgment to reflect 441 days of presentence custody credit.

9

The trial court shall send a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

ASHMANN-GERST

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.