Filed 8/18/14  P. v. Loveless CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049644 |
| v. | (Super. Ct. No. FSB702707) |
| QUWONTE LOVELESS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Duke D. Rouse, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

Quwonte Loveless appeals from a judgment after a jury convicted him of first degree murder, attempted willful, deliberate, and premeditated murder, and assault with a firearm, and found true firearm and street gang enhancements. Loveless argues the following: (1) the trial court erred in failing to instruct the jury sua sponte with a CALJIC instruction on resolving doubt between first and second degree murder in favor of the defendant; (2) the court erred in failing to give the jury the option of finding him guilty of attempted murder that was not willful, deliberate, and premeditated; and (3) there were sentencing errors. We agree the trial court's instructions and the verdict form on attempted murder were erroneous but conclude Loveless was not prejudiced. We also conclude the trial court erred in sentencing Loveless. His other instructional claim is meritless, and we affirm the judgment as modified.

FACTS

In June 2007, Summer Starnes had a 16th birthday party at her home on 5580 Bonnie Street in San Bernardino. The day of the party, Starnes saw Loveless and Trevon Miller at a liquor store and invited them to her party. At the party, Starnes arranged for someone to search guests for weapons before they entered her home.

Nineteen-year-old Loveless, a member of the 59th Street East Coast Crips (59th Street) who went by the gang moniker "Killer Tae," went to the party with Miller[1] and Marshon Triplett.[2] Miller, who was 14 years old, was also a member of 59th Street and went by the gang moniker "Capone." Triplett, who was 16 years old, was a member of 18th Street Maze (18th Street) and went by the gang moniker, "Young 9" or "Baby 9."

---

[1] In exchange for his truthful testimony, Miller would not serve his 21-year prison sentence for committing voluntary manslaughter for the benefit of a criminal street gang.

[2] In exchange for his truthful testimony, Triplett would not serve his 21-year prison sentence for committing voluntary manslaughter for the benefit of a criminal street gang.

2

Loveless, Miller, and Triplett were driven to the party by a man they knew as "Joe Blow" (Blow) in a Chevrolet Tahoe.

Miller had a gun, which he gave to Loveless to sneak into the party. Loveless, Miller, and Triplett went into the backyard. In the backyard, Donzell Tate, a member of the Rolling 40 Crips (Rolling 40), approached Loveless and asked him if they still had a problem. Six years earlier Tate stabbed Loveless's "godbrother." Tate told Loveless, "I am going to stab you like I stabbed your brother[.]" Loveless pulled out a gun and threatened to shoot Tate as they continued to argue. Tate told Loveless they should move to the front of the house. Loveless refused Miller's offer to hold the gun. Tate said he was going to get his gun and left.

Loveless, Miller, and Triplett got into Blow's vehicle, and Blow drove away; Loveless was in the passenger seat. Blow made a U-turn and drove past Starnes's home. As Blow drove past the house, Loveless opened fire, firing 12 to 15 shots, two of which hit Demetrius Payne and resulted in his death.

Officers arrived at the scene and found 12 bullet casings in front of Starnes's home and on the street. Officers found two bullet holes in a car parked down the street. They also found two bullet holes in a residence near Starnes's house. All of the rounds were fired from the same .40 caliber gun.

A November 2007 information charged Loveless with first degree murder of Payne (Pen. Code, § 187, subd. (a))[3] (count 1), attempted willful, deliberate, and premeditated murder of Tate (§§ 664, 187, subd. (a)) (count 2), and assault with a firearm (§ 245, subd. (a)(2)) (count 3). With respect to counts 1 and 2, the information alleged Loveless personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), personally used a firearm (§ 12022.53, subd. (b)), and committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). As to count 1, the

_____

[3] All further statutory references are to the Penal Code, unless otherwise indicated.

3

information also alleged he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). With respect to count 3, the information alleged he personally used a firearm (§ 12022.5, subds. (a), (d)).

After numerous continuances and pre-trial motions, trial commenced in April 2012. Triplett testified he did not remember if anyone in front of the house had a gun as they drove by. He did not remember hearing any gun shots other than when Loveless fired the gun. Miller testified they had to make a U-turn because Bonnie Street was a cul-de-sac. He stated that after Blow made the U-turn, he heard Triplett say, "Somebody got a gun." He did not hear any shots other than the shots Loveless fired.

Officer Michael Salazar testified concerning the physical evidence officers found on Bonnie Street. When presented with a photographic exhibit of Bonnie Street, Salazar said it was not a cul-de-sac; it is bordered on the south by Eureka Street and on the north by Foothill Drive. He said a driver going north on Bonnie Street would not have to make a U-turn to exit Bonnie Street.

The parties stipulated 59th Street was a criminal street gang as defined in section 186.22. Kevin Snyder, a gang expert testified Loveless was a 59th Street gang member based on his self-admissions, his tattoos, and his associates. Snyder opined the offenses were committed for the benefit of a criminal street gang because the offenses show 59th Street gang members are willing to commit murder "to get their point across."

Loveless testified on his own behalf. Loveless admitted he pulled out a gun after Tate threatened to stab him. As Loveless walked towards Blow's vehicle, he heard Tate say he was going to get his gun to shoot Loveless. Loveless, Miller, and Triplett got into Blow's vehicle, Blow drove away, and he made a U-turn. As they drove past Starnes's home, Miller said, "'He got a gun.'" Loveless saw a flash and heard a gunshot. Loveless put his gun out of the window and fired in the direction of where the gunshot came from. Loveless testified he did not want to get shot and he did not intend to kill

4

anyone.  He only wanted to get out of the area without being shot.  Loveless claimed that a couple days later, he saw a couple of bullet holes in Blow's vehicle.

The trial court discussed the jury instructions, the CALCRIM instructions, both off and on the record.  At no point did Loveless request the trial court instruct the jury with any CALJIC instructions.  As relevant here, the court instructed the jury with the following:  CALCRIM Nos. 220, "Reasonable Doubt;" 520, "Murder:  First and Second Degree;" 521, "First Degree Murder;" 522, "Provocation:  Effect on Degree of Murder;" 570, "Voluntary Manslaughter:  Heat of Passion—Lesser Included Offense;" 571, "Voluntary Manslaughter:  Imperfect Self-Defense or Imperfect Defense of Another—Lesser Included Offense;" 600, "Attempted Murder;" 601, "Attempted Murder:  Deliberation and Premeditation;" and 641, "Deliberations and Completion of Verdict Forms."

The jury convicted Loveless of all the counts and found true all the enhancements, with the exception of the gang enhancement as to count 1 on which it could not reach a verdict.

The trial court sentenced Loveless to 50 years to life as follows: count 1-25 years to life plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d), enhancement; the court imposed and stayed sentences on the other enhancements; count 2-seven years to life concurrent to count 1 plus consecutive sentences on the enhancements, including 10 years for the gang enhancement; and count 3-the court imposed and stayed sentences for the offense and enhancement.

DISCUSSION

## I.  Jury Instructions

## A.  Degree of Murder

Loveless argues the trial court erred in failing to instruct the jury sua sponte with CALJIC Nos. 8.71 or 17.10 on the interplay between first degree murder and the

5

lesser offense of second degree murder. Specifically, he claims the court failed to instruct the jury that if they unanimously agreed he committed murder but had a reasonable doubt whether murder was of the first or of the second degree, they should give him the benefit of the doubt and return a verdict of second degree murder. The Attorney General, noting the court instructed the jury with CALCRIM instructions, contends Loveless forfeited appellate review of this claim because he did not request either instruction, and alternatively the court did not err because courts are advised not to give CALJIC and CALCRIM instructions together, and the court properly instructed the jury on the interplay between charged offenses and lesser offenses. We agree with the Attorney General.

CALCRIM No. 521 is the newer counterpart to CALJIC No. 8.71, "Doubt Whether First or Second Degree Murder." (*People v. Moore* (2011) 51 Cal.4th 386, 412, fn. 8 [CALCRIM No. 521 clearer than CALJIC No. 8.71].) Loveless does not dispute CALCRIM No. 521 is a correct statement of the law. He argues, however, the court had a sua sponte duty to instruct the jury with CALJIC No. 8.71, or CALJIC No. 17.10, "Conviction of Lesser Included or Lesser Related Offense—Implied Acquittal—First." Loveless fails to recognize courts are specifically cautioned against using the instructions together. (*People v. Beltran* (2013) 56 Cal.4th 935, 943-944, fn. 6 ["CALCRIM User's Guide expressly cautions" CALCRIM instructions should never be used with CALJIC instructions].) More importantly, because CALCRIM No. 521 is a correct statement of law, his failure to request further clarification is forfeited for failing to raise the issue below. (*People v. Young* (2005) 34 Cal.4th 1149, 1202 ["defendant's failure to request clarification instruction forfeits that claim on appeal"].) Although Loveless forfeited appellate review of this issue, we will address the merits of his claim to avoid the inevitable ineffective assistance of counsel claim. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 92.)

"A court is required to instruct on the law applicable to the case, but no particular form is required; the instructions must be complete and a correct statement of the law." (*People v. Fiu* (2008) 165 Cal.App.4th 360, 370.) On a claim of instructional error, "[w]e must consider whether it is reasonably likely that the trial court's instructions caused the jury to misapply the law. [Citations.] '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) "The court has no duty to give an instruction if it is repetitious of another instruction also given." (*People v. Barajas* (2004) 120 Cal.App.4th 787, 791.)

Whenever the evidence would support a conviction of the charged offense and a lesser included offense, the jury must be instructed that if it has found defendant committed an offense but has reasonable doubt about which offense the defendant committed, it must find the defendant guilty only of the lesser offense. (§ 1097; *People v. Dewberry* (1959) 51 Cal.2d 548, 555 (*Dewberry*).) The trial court must instruct the jury on this principle sua sponte in any case involving a lesser included offense. (*People v. Crone* (1997) 54 Cal.App.4th 71, 76 (*Crone*).) Since second degree murder is a lesser included offense of first degree murder (*People v. Blair* (2005) 36 Cal.4th 686, 745, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919), we agree with Loveless the court had a duty to instruct the jury in accordance with *Dewberry*. It did.

The trial court instructed the jury Loveless was presumed innocent and the prosecution needed to prove his guilt beyond a reasonable doubt (CALCRIM No. 220), to find him guilty of murder, the prosecution had to prove certain elements (CALCRIM No. 520), and that provocation may reduce a murder from first degree to second degree (CALCRIM No. 522).

The court also instructed the jury with CALCRIM No. 521, which instructed the jury that if it found Loveless committed murder, it must decide whether it was murder of the first or second degree. The instruction defined first and second degree

7

murder and then told the jurors that: "The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder." In other words, the court instructed the jury that if they had any doubt as to the degree of murder, they must find Loveless not guilty of first degree murder. Although CALJIC No. 8.71[4] and CALCRIM No. 521 use different language, both instructions convey the same general legal principle that if the jury finds the defendant has committed murder, it cannot convict the defendant of first degree murder if it is not convinced beyond a reasonable doubt. Additionally, CALJIC No. 17.10 is similar to CALCRIM No. 641, which the trial court gave to the jury in this case. As indicated by the Bench Notes accompanying CALCRIM No. 641, this instruction is intended to satisfy the *Dewberry* requirement.

Loveless's reliance on *Crone, supra,* 54 Cal.App.4th 71, is misplaced. In that case, the deficient instruction (CALJIC No. 17.03) did not "tell[ ] the jury what to do if it ha[d] a reasonable doubt as to whether the defendant committed the greater or a lesser offense," and "it [did] not appear that the omission was cured by any other instructions." (*Id.* at pp. 76-77.) As we have explained, however, the instructions here adequately told the jury what to do if it had reasonable doubt between first and second degree murder. Thus, based on the entire charge, we conclude the trial court properly instructed the jury on the interplay between first and second degree murder and because there was no error, Loveless was not prejudiced.

---

[4]     CALJIC No. 8.71 provides: "If any juror is convinced beyond a reasonable doubt that the crime of murder has been committed by a defendant, but has a reasonable doubt whether the murder was of the first or of the second degree, that juror must give defendant the benefit of that doubt and find that the murder is of the second degree."

8

*B. Attempted Murder*

Relying on the instruction concerning completing the verdict forms and the verdict form for count 2, Loveless asserts the trial court erred in failing to give the jury the option of finding him guilty of attempted murder as a lesser included offense of attempted willful, deliberate, and premeditated murder. Relying on *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), the Attorney General responds attempted murder is not a lesser included offense of attempted willful, deliberate, and premeditated murder. The Attorney General also argues the court was not required to instruct the jury on "attempted murder" because the evidence pointed only to the conclusion he acted willfully, deliberately, and with premeditation and any error was harmless. We agree the court erred but conclude the error was harmless.

"'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. [Citation.] Attempted murder requires express malice, that is, the assailant either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.' [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.)

"The mental state required for attempted murder has long differed from that required for murder itself. Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices. [Citation.] But over a century ago, [the California Supreme Court] made clear that implied malice cannot support a conviction of an *attempt* to commit murder. '"To constitute murder, the guilty person need not intend to take life; but to constitute an attempt to murder, he must so intend." [Citation.] "The wrong-doer must specifically contemplate taking life; and though his act is such as, were it successful, would be murder, if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder." [Citation.]' [Citations.]" (*People v. Bland* (2002) 28 Cal.4th 313, 327-328.) Premeditation and deliberation can be established by

planning activity, preexisting motive, and manner of killing, the factors set forth in *People v. Anderson* (1968) 70 Cal.2d 15, 26-27. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 294 (*Gonzales and Soliz*).) Premeditation and deliberation may be proven by circumstantial evidence. (*Ibid.*)

"Section 664[, subdivision](a) provides that a defendant convicted of attempted murder is subject to a determinate term of five, seven, or nine years. However, a defendant convicted of attempted murder is subject to a sentence of life with the possibility of parole if the jury finds that the attempted murder was 'willful, deliberate, and premeditated murder, as defined in [s]ection 189.' [Citation.]" (*Favor, supra,* 54 Cal.4th at p. 875.) The *Favor* court explained the interplay between the two.

"[A]ttempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees. [Citations.] '[T]he provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is "willful, deliberate, and premeditated" does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder.' [Citation.] '[T]he statutory language employed in prescribing an additional penalty for attempted murder . . . reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense.' [Citation.]" (*Favor, supra,* 54 Cal.4th at pp. 876-877.)

Here, the trial court instructed the jury with CALCRIM Nos. 600 and 601. CALCRIM No. 600 provided the jury with the elements of attempted murder. CALCRIM No. 601 provided the jury with the definitions of deliberation and premeditation. That instruction began, "If you find [Loveless] guilty of attempted murder under [c]ount 2, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation." Based on these instructions, it is clear the court properly instructed the

10

jury it first had to determine whether Loveless was guilty of the offense and then had to determine whether the penalty provision applied. Loveless does not dispute these instructions were proper.

The problem though lies in another instruction and the verdict form. Another instruction, what we presume to be CALCRIM No. 3517, concerns deliberations and the completion of the verdict forms. As to count 2, it states, "We, the jury in the above-entitled action, find . . . Loveless, guilty of the crime of attempted willful, deliberate, and premeditated, as charged in [c]ount 2; or [¶] We, the jury in the above-entitled action, find . . . Loveless, guilty of attempted voluntary manslaughter, a lesser included offense to [c]ount 2; or [¶] We, the jury in the above-entitled action, find . . . Loveless, not guilty as to [c]ount 2." (Capitalization omitted.) This instruction did not give the jury the option to convict Loveless of attempted murder without the penalty provision. The verdict forms suffered from the same deficiency. The count 2 verdict form did not have a separate finding for the premeditation and deliberation penalty provision. Nor was there a separate verdict form for the jury to make that finding as to count 2.

Although we determine the correctness of the jury instructions from the entire charge, we conclude the court erred. CALCRIM Nos. 600 and 601 properly informed the jury it had to first determine whether Loveless was guilty of attempted murder and if it so concluded, the jury had to determine whether he committed the offense willfully, deliberately, and with premeditation. However, CALCRIM No. 3517 and the count 2 verdict form gave the jury only one option when determining whether Loveless was guilty of attempted murder: attempted willful, deliberate, and premeditated murder or nothing. The jury could not convict Loveless of attempted murder without the premeditation and deliberation penalty provision.

However, we conclude Loveless was not prejudiced because it was not reasonably probable he would have obtained a more favorable result had the trial court

11

not erred. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); see *People v. Lasko* (2000) 23 Cal.4th 101, 111 [stating *Watson* harmless error standard applicable to instructional error on lesser included offenses and theories supported by evidence].) The record contains circumstantial evidence from which the jury could reasonably conclude Loveless acted willfully, deliberately, and with premeditation when he attempted to murder Tate. Tate stabbed Loveless's godbrother and threatened to stab Loveless. Without hesitation, Loveless pulled out a gun and threatened to shoot Tate. After Blow picked up Loveless, Miller, and Triplett and drove north on Bonnie Street, Blow turned around. Salazar testified Bonnie Street was not a cul-de-sac as Miller claimed. Blow did not have to turn around, but he did to drive past Starnes's home. As Blow drove by the house, Loveless put the gun out the window and fired 12 times at the people standing in front of Starnes's home. Loveless claimed he heard someone in the vehicle say, "'He got a gun[,]'" he saw a flash, and heard a gunshot, but neither Miller nor Triplett heard any gunshots before Loveless fired his gun. Evidence of motive (Tate previously stabbed Loveless's family member and threatened to stab Loveless), planning (Blow turned around to drive past Starnes's home when he did not have to), and manner of attempting to kill (Loveless fired his gun 12 times), were sufficient circumstantial evidence Loveless retaliated against Tate and intended to murder him willfully, deliberately, and with premeditation.

*Gonzales and Soliz, supra,* 52 Cal.4th 254, is instructive. In that case, defendants were members of a Hispanic street gang. (*Gonzales and Soliz, supra,* 52 Cal.4th at p. 263.) They were in a car when they saw two or three African-American men from a rival gang standing in the driveway of a gas station. (*Id.* at pp. 268-270.) Defendants recognized the men and told the driver of the car to return to the gas station. (*Id.* at p. 270.) One of the defendants shot the African-American men. (*Id.* at p. 269.) When one of the victims started to crawl away, the shooter walked up and shot him again. (*Ibid.*) One of the victims had been shot nine times, one from behind while kneeling on

the ground with the shooter standing over him, and the other had been shot seven times, including two fatal wounds to the head.  (*Id.* at p. 271.)

The California Supreme Court held there was sufficient evidence of premeditation and deliberation.  "[T]he evidence of motive was that defendants targeted [the victims] for a gang retaliation murder . . . .  This motive evidence supported the inference that defendants, who were armed at the time, had the prospect of retaliation in mind and quickly decided to commit the murders once they identified potential targets.  A reasonable inference, therefore, is that defendants formed the intent to commit premeditated and deliberate murder as early as when they asked the driver to turn the car around and return to the gas station to confront [the victims] . . . ."  (*Gonzales and Soliz, supra,* 52 Cal.4th at p. 295.)  As for "manner" evidence, the court stated multiple gunshots at close range with a semiautomatic weapon supports an inference of premeditation and deliberation.  (*Ibid.*)

Like the defendants in *Gonzales and Soliz,* Loveless had a motive to shoot Tate, and the jury could reasonably infer Blow turned around so Loveless could do so.  Admittingly, the shots here were not at close range like in *Gonzales and Soliz.*  However, Loveless's purposeful return and multiple gunshots support an inference of premeditation and deliberation.  Thus, we conclude there was sufficient circumstantial evidence Loveless was guilty of count 2 with premeditation and deliberation, and Loveless was not prejudiced by the trial court's errors because it was not reasonably probable he would have received a better result had the court not erred.

II.  *Sentence-Count 2*

A.  *Principal Term*

Loveless argues the trial court erred in sentencing him to a concurrent term of seven years to life for attempted willful, deliberate, and premeditated murder because section 664, subdivision (a), mandates an indeterminate sentence of life with the

13

possibility of parole. Relying on *People v. Jefferson* (1999) 21 Cal.4th 86 (*Jefferson*), the Attorney General responds the sentence on count 2 was proper. We agree with Loveless.

Section 664, subdivision (a), provides: "However, if the crime attempted is willful, deliberate, and premeditated murder, as defined in [s]ection 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." (*Favor, supra,* 54 Cal.4th at p. 875.) Thus, the trial court erred in sentencing Loveless to a concurrent term of seven years to life for willful, deliberate, premeditated attempted murder. The proper term was life with the possibility of parole.

*Jefferson, supra,* 21 Cal.4th 86, is of no assistance to the Attorney General as that case involved the minimum term when the trial court sentenced defendant under the Three Strikes Law (§ 667). We are not concerned here with the Three Strikes Law, and section 664, subdivision (a), clearly provides the applicable sentence for attempted willful, deliberate, and premeditated murder—life with the possibility of parole.

B. *Section 186.22, Subdivision (b)*

Relying on *People v. Lopez* (2005) 34 Cal.4th 1002 (*Lopez*), Loveless contends the trial court erroneously imposed a 10-year enhancement on count 2 pursuant to section 186.22, subdivision (b)(1)(C), because attempted willful, deliberate, and premeditated murder is punishable by life in prison. The Attorney General concedes the error.

In *Lopez, supra,* 34 Cal.4th at pages 1004, 1007, the California Supreme Court held a defendant convicted of first degree murder with a street gang enhancement is not subject to a 10-year enhancement under section 186.22, subdivision (b)(1), but rather a 15-year minimum eligible parole date under section 186.22, subdivision (b)(5). Here, the trial court erred in imposing and staying a 10-year street terrorism enhancement under section 186.22, subdivision (b)(1)(C). We modify the judgment by striking the 10-year street terrorism enhancement.

14

DISPOSITION

The judgment is modified as to count 2 to reflect a concurrent term of life with the possibility of parole and to strike the 10-year street terrorism enhancement as to section 186.22, subdivision (b)(1)(C). The remaining sentences on count 2 are affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment consistent with this opinion and forward it to the Department of Corrections and Rehabilitation, Division of Adult Operations. In all other respects, the judgment is affirmed as modified.

O'LEARY, P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.