Filed 11/23/15  P. v. Franklin CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELVIN DONNELL FRANKLIN,<br><br>    Defendant and Appellant. | H040085<br>(San Benito County<br>Super. Ct. No. CR120175) |

Appellant Melvin Donnell Franklin appeals the denial of a petition to recall his sentence under Penal Code section 1170.126,[1] enacted by voters in 2012 through the passage of Proposition 36.  In 1994, appellant was convicted on four counts of second degree burglary (§ 459), one count of possessing stolen property (§ 496), and one count of possessing cocaine (Health & Saf. Code, § 11350).  The trial court found allegations that appellant had suffered two prior strike convictions to be true.  The court sentenced appellant to an aggregate term of 125 years to life in prison.  In 2012, appellant filed a petition for a writ of habeas corpus seeking resentencing under section 1170.126.  The trial court denied the petition.

Appellant raises three claims on appeal.  First, he contends his trial counsel provided ineffective assistance by failing to request a jury trial on his suitability for

---

[1] Subsequent undesignated statutory references are to the Penal Code.

resentencing. Second, he contends the trial court erred by finding he posed an unreasonable risk of danger to public safety. Third, he contends the matter should be remanded to the trial court for reconsideration of whether he poses an unreasonable risk of danger to public safety under a recently revised version of the applicable standard set forth in section 1170.18, subdivision (b), enacted by voters in 2014 through the passage of Proposition 47.

We conclude defendant does not have a constitutional right to a jury trial on his suitability for resentencing, nor was his counsel's performance deficient for failing to request a trial. Second, we conclude the trial court did not abuse its discretion by finding defendant posed an unreasonable risk of danger to public safety. Finally, we conclude that the definition of "unreasonable risk of danger to public safety" in subdivision (c) of section 1170.18 does not apply retroactively to petitions adjudicated prior to the enactment of that provision. Accordingly, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *The Current Offenses*

A prior opinion in this case described the offenses as follows:[2] "At about 1:00 a.m. on March 25, 1994, defendant burglarized San Benito Recycling. He stole about $100 in coins. He entered the building through a rooftop vent and wore gloves during the burglary. At 1:00 a.m. on March 28, defendant burglarized Brothers Market. He stole cigarettes and money. Again, he entered through a rooftop vent and wore gloves during the burglary. On March 29, at about 1:00 a.m., defendant again burglarized Brothers Market. This time he took a very large quantity of cigarettes and more coins. Defendant burglarized San Benito Recycling again on April 2 at about 12:30 a.m. About

---

[2] Defendant requests that we take judicial notice of our two prior nonpublished opinions on appeal. (*People v. Franklin* (Jun. 18, 1998, H016944); *People v. Franklin* (Oct. 25, 1996, H013364).) We hereby grant the request. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

$100 worth of coins was stolen. He gained access through the rooftop vent again. Defendant was arrested on the afternoon of April 2. He had .49 grams of cocaine in his pocket at the time of his arrest."

"Three weeks after his April 1994 arrest for the current offenses, defendant was released on his own recognizance. Defendant proceeded to brazenly steal large quantities of irrigation pipe from a ranch in Santa Clara County. He sold the pipe to the San Benito Recycling Center. Defendant committed these thefts in broad daylight while wearing a jacket with his last name on a 'name patch' on the front of the jacket. [¶] After defendant had been convicted of his current offenses, but before his original sentencing hearing, defendant discussed his escape plans with a fellow inmate, and he created a large hole in the wall of his San Benito County jail cell. He tried to conceal the hole. Defendant told another prisoner that he might escape 'on a medical appointment and when the Deputy took his handcuffs off to sign the paperwork, [defendant] would attack the Deputy taking his gun and an [sic] hostage and escape.' Defendant also stated that 'he could overcome a female C/O [correctional officer] and demand the control officer open the door or he would break the female officer's neck.' He claimed that this plan would succeed because 'no one would just watch a female die.' "

B. *Prior Offenses*

Defendant's prior offenses were described as follows: "In May 1981, at the age of 17, defendant attempted to cash a stolen endorsed social security check in Tennessee. He admitted the offense, and he was placed on probation and ordered 'not to use or possess any type of drugs.' On August 8, 1984, defendant entered the San Jose home of an elderly acquaintance, battered her, stole her money and used the money to buy drugs and fund a trip to Tennessee. A warrant was issued for defendant's arrest on August 16. In November 1984, defendant and an accomplice robbed a 75-year-old man in Tennessee. The two men 'wrestled' the elderly victim to the floor and took his wallet. As in the San Jose offense, the elderly victim was an acquaintance of defendant. Defendant was

3

arrested about a week later.  He pled guilty to the Tennessee robbery and was committed to the Tennessee State Penitentiary for a seven-year term.  In February 1986, defendant pled guilty to the San Jose robbery offense and was committed to California state prison for a four-year term.  He was released on parole in 1988."

C. *Procedural Background*

1. *Prior Trial Court Proceedings*

In 1994, the prosecution charged defendant by information with four counts of second-degree burglary (§ 459), one count of possessing stolen property (§ 496), and one count of possessing cocaine (Health & Saf. Code, § 11350, subd. (a).).  Initially, the information alleged one prior serious felony conviction for robbery (§ 211) based on defendant's 1984 robbery of the elderly woman in San José.  Defendant pleaded guilty to two counts of burglary and one count of possessing cocaine, and he admitted the 1984 prior offense, in exchange for a maximum sentence of eight years ten months and dismissal of the remaining counts.  However, before defendant was sentenced, the prosecution discovered his out-of-state conviction for the 1984 robbery of the elderly man in Tennessee.  The prosecution moved to amend the information to allege the additional prior serious felony.  The trial court granted the motion to amend and defendant withdrew his pleas, whereupon the case proceeded to jury trial.

In a bifurcated proceeding, the jury found defendant guilty on all counts, and the trial court found the prior serious felony convictions to be true.  The trial court sentenced defendant to five consecutive terms of 25 years to life, for an aggregate term of 125 years to life in prison.

2. *Prior Proceedings on Appeal*

In defendant's first direct appeal to this court in 1996, we vacated the judgment and remanded to the trial court for resentencing because the court had erroneously ruled that it lacked discretion to strike the prior convictions or reduce the felony burglary convictions to misdemeanors.  On remand, the trial court denied defendant's motion to

4

strike the prior convictions, declined to reduce the felonies to misdemeanors, and reinstated the judgment. In defendant's second appeal to this court in 1998, we affirmed the judgment. The California Supreme Court denied review of defendant's second appeal.

### 3. *Disciplinary Record in Custody*

During his 19 years in custody, defendant enrolled in various educational and vocational programs. He received numerous certificates of achievement in computer fundamentals, word processing, Power Point, Excel, alphabetical indexing, typing, business English, business law, proofreading, accounting, and bookkeeping. He completed online classes through the Coastline Community College Distance Learning Program, and he attended various rehabilitative courses in substance abuse, victim awareness, and other areas.

Defendant suffered numerous nonviolent disciplinary violations, including possession of contraband, defiant behavior, "horse playing," using inappropriate language with staff, positive drug tests for marijuana, and manufacturing alcohol. In 2006, defendant was found in possession of an inmate-manufactured weapon described as "a piece of hard metal approximately 4 and ½ inches in length wrapped in blue paper with a rubber band tighten[ed] around it." Apart from possession of the weapon, defendant's file contained no records of "overtly dangerous or violent violations." Defendant's CDCR classification score as of December 2012 was 19, which, he argues, represents the lowest possible score for disciplinary violations.

### 4. *Petition for Resentencing*

On November 14, 2012, defendant filed a petition for writ of habeas corpus in the trial court seeking resentencing under section 1170.126. The trial court issued an order to show cause as to why relief should not be granted, and the court appointed counsel for defendant. The probation department issued a qualification hearing report concluding "defendant's disciplinary and rehabilitation records from CDC do not indicate he would

5

be an unreasonable risk to public safety if released and re-sentencing should be considered based on these factors." The prosecution filed written opposition to resentencing based on the nature of his offenses and his disciplinary violations in prison. Defendant argued that his offenses had occurred long ago, and that none of his disciplinary violations were violent in nature.

The trial court found defendant posed an unreasonable risk of danger to public safety and denied resentencing. As an initial matter, the court noted "it's the mandatory duty of the Court" to resentence an eligible petitioner under section 1170.126 unless the court determines the petitioner would pose an unreasonable danger to public safety.[3] On that basis, the court concluded that "it appears the burden is on the People" to make such a showing. After argument from both sides, the trial court set forth the factors underlying its ruling.

The court noted the serious nature of defendant's prior robbery offenses—both robberies were committed against vulnerable victims—and the court considered the relative seriousness of the commercial burglary convictions. The court observed that defendant's in-custody disciplinary violations had been nonviolent in nature, but the court also observed that fellow prisoners present a much less attractive target for violence compared to persons in free society. The court also observed that defendant's disciplinary violations evidenced a continuing problem with abuse of and addiction to drugs and alcohol. Because defendant's past criminal behavior had been related to his drug use, the court reasoned that his continued substance abuse issues increased the chances he would reoffend if released. On this basis, the court concluded defendant posed an unreasonable danger to public safety under section 1170.126. The court denied defendant's petition for resentencing on August 23, 2013.

---

[3] Defendant's eligibility for resentencing was uncontested.

6

## II. DISCUSSION

A. *Ineffective Assistance of Counsel for Failure to Request a Jury Trial*

Defendant contends his trial counsel provided ineffective assistance by failing to request a jury trial on his suitability for resentencing. The Attorney General, relying on *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 *(Kaulick)*, argues that petitioners under section 1170.126 do not have a Sixth Amendment right to jury trial on the issue of suitability for resentencing. We agree with the Attorney General. Because defendant had no right to a jury trial, his counsel's performance was not deficient for failing to request one.

1. *Legal Principles*

In November 2012, voters approved Proposition 36, the Three Strikes Reform Act of 2012. Under the previous "Three Strikes" law (§§ 667, subds.(b)-(i), 1170.12), a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. Under the Three Strikes Reform Act of 2012, a defendant convicted of two prior serious or violent felonies is subject to the 25-years-to-life sentence only if the third felony itself is a serious or violent felony. If the third felony is not a serious or violent felony, the defendant is sentenced as if he or she had only one prior serious or violent felony conviction and is therefore treated as if he or she were a second-strike offender.

Prisoners currently serving sentences of 25 years to life for a third felony that was neither serious nor violent may file a petition to seek resentencing. Under certain circumstances, a petitioner will be resentenced as if he or she had only one prior serious or violent felony conviction. If a petitioner meets the criteria for eligibility set forth in subdivision (e) of section 1170.126, "the petitioner *shall be resentenced* [. . .] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f), italics added.) In exercising its discretion under this subdivision, the court may consider: the petitioner's

7

criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; the petitioner's disciplinary record and record of rehabilitation; and any other evidence the court finds relevant. (§ 1170.126, subd. (g).)

2. *A Petitioner Has No Right to a Jury Trial Under Section 1170.126*

Defendant, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and *Cunningham v. California* (2007) 549 U.S. 270, contends he enjoys the right to a jury trial on his suitability for resentencing under the Sixth Amendment. We disagree.

In *Kaulick*, *supra*, 215 Cal.App.4th 1279, the Second District Court of Appeal considered, among other things, the standard of proof applicable to the subdivision (f) dangerousness inquiry. Kaulick argued that under the federal constitution the prosecution bore the burden of proving his dangerousness beyond a reasonable doubt. But based on *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*), the *Kaulick* court rejected that argument. As the *Kaulick* court observed, the United States Supreme Court held in *Dillon* that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do[es] not apply to limits on downward sentence modifications due to intervening laws." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.)

Defendant attempts to distinguish *Dillon* on the ground that section 1170.126 creates a presumption of resentencing, such that a finding of dangerousness is a prerequisite to an *increase* in penalty. But the *Kaulick* court rejected this argument as well. Based on the language of the statute, the court held that "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced. [¶] The maximum sentence to which Kaulick, and those similarly situated to him, is subject was,

8

and shall always be, the indeterminate life term to which he was originally sentenced." (*Id.* at p. 1303.) Accordingly, the court concluded that "[a]ny facts found at such a [section 1170.126] proceeding, such as dangerousness, do not implicate Sixth Amendment issues." (*Id.* at p. 1305.)

Defendant acknowledges the legal authority set forth in *Kaulick*, but contends *Kaulick* was wrongly decided. We disagree. We find the reasoning of *Kaulick* persuasive, and we conclude defendant had no right to a jury trial as to a finding of dangerousness under section 1170.126. Counsel's failure to request a trial did not constitute deficient performance, as any request for a jury trial would have been futile. (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 [counsel is not required to proffer futile objections].) We thus conclude defendant's claim of ineffective assistance of counsel is without merit.

B. *The Trial Court's Finding of Dangerousness*

Defendant challenges the trial court's finding that he posed an unreasonable risk of danger to public safety. He argues that the language of section 1170.126 creates a mandatory presumption of resentencing, and that the prosecution bears the burden of proving dangerousness beyond a reasonable doubt under *Apprendi*, *supra*. He then argues that the trial court violated the presumption of resentencing, failed to find any nexus between the current offense and his potential dangerousness, and failed to consider facts disproving his dangerousness. The Attorney General contends section 1170.126 does not establish any presumption or burden of proof as to defendant's dangerousness. She argues the trial court has broad discretion to determine dangerousness, and that under the applicable standard of review, the court's finding need only be supported by "some evidence."

We will apply an abuse of discretion standard of review to the trial court's finding of dangerousness. Under that standard of review, we conclude the court did not abuse its discretion by denying the petition.

9

1. *The Prosecution Has the Burden of Proof by a Preponderance of the Evidence*

As noted above, the Second District Court of Appeal in *Kaulick* considered the burden of proof for a finding of dangerousness. The court rejected the argument that the prosecution bears the burden of proving dangerousness *beyond a reasonable doubt* under *Apprendi*. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1304, italics added.) But based on the language of the statute, the court concluded that the prosecution bears the burden of proving dangerousness. The court then noted "the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence." (*Id.* at p. 1305.) We agree with *Kaulick* that the burden under section 1170.126 is on the prosecution to prove the factors establishing dangerousness by a preponderance of the evidence. The record here shows the trial court properly placed that burden on the prosecution.[4]

2. *The Abuse of Discretion Standard of Review Applies to a Finding of Dangerousness*

We next consider the proper standard of review for an appellate challenge to a finding of dangerousness. The plain language of section 1170.126 gives the trial court discretion in at least three respects. First, subdivision (f) of the statute explicitly gives the court discretion in determining whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) Second, the statute provides that "[i]n exercising its discretion in subdivision (f), the court *may* consider" three categories of factors. (§ 1170.126, subd. (g), italics added.) In the third category of factors, the statute allows the court to consider "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence

---

[4] Although the court did not expressly state that the burden required a *preponderance* of the evidence as compared to some other threshold, it appears based on the court's weighing of various factors that it applied a preponderance of the evidence standard.

would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(3).) Furthermore, as long as the court properly makes a finding of dangerousness under the procedural auspices of the statute, nothing in the exercise of the court's discretion directly implicates the petitioner's fundamental constitutional rights. Nor does a finding of dangerousness require the making of abstract legal rules with the potential for precedential value or policy-making consequences. Given the explicit grant of discretion to the trial court under the plain language of the statute, we conclude abuse of discretion is the proper standard of review for a determination of dangerousness on appeal.

As to whether the trial court's factual findings are subject to either the "substantial evidence" or "some evidence" standard of review, we need not address that issue, as defendant has not challenged—neither here nor below—any of the trial court's factual findings.

3. *The Trial Court's Finding of Dangerousness Was Not an Abuse of Discretion*

We conclude the trial court did not abuse its discretion by finding defendant presented an unreasonable risk of danger to public safety. The trial court set forth the factors underlying its finding. These included the serious nature of defendant's prior offenses, defendant's disciplinary violations in custody, his possession of a weapon, and his continued use of drugs and alcohol, which the court found related to his potential for future criminality. Defendant argues that the trial court failed to articulate a nexus between his prior criminal offenses and his current dangerousness. While nothing in section 1170.126 requires the trial court to articulate such a nexus, the record shows the court did so here. The court reasoned that defendant's continued substance use—a problem which defendant himself blamed for his past offenses—increased the chances he would reoffend upon release. These facts support the trial court's reasoning.

Defendant also argues that the trial court failed to consider his CDCR classification score of 19—which, according to defendant, establishes his lack of

11

dangerousness. He further argues that the court failed to consider the remoteness of his prior offenses compared with his current age. But the statutory language guiding the trial court's consideration of various factors is permissive: "the court *may* consider" the enumerated factors. (§ 1170.126, subd. (g), italics added.) Nothing in section 1170.126 or any other authority *requires* the trial court to consider any specific factor, much less set forth on the record all the factors it considered. Defendant relies on case law requiring the Board of Parole Hearings to consider all relevant factors when evaluating parole suitability. (See, e.g., *In re Stoneroad* (2013) 215 Cal.App.4th 596.) But defendant sets forth no authority making those cases applicable to resentencing proceedings under section 1170.126.

We conclude the trial court's finding of dangerousness under section 1170.126 was sufficiently supported by the record and did not constitute an abuse of discretion.

C. *The Newly Enacted Definition of Dangerousness Under Proposition 47*

In November 2014, during the pendency of this appeal, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act. Among other things, Proposition 47 created a new resentencing scheme under section 1170.18 for persons serving felony sentences for certain offenses. (§ 1170.18, subd. (a).) Unlike section 1170.126 of Proposition 36, section 1170.18 of Proposition 47 provides an explicit definition for the dangerousness standard. It says, "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) Thus, a "new violent felony" under this provision refers to the same so-called "Super Strike" felonies from Proposition 36 that preclude a petitioner from resentencing under that statutory scheme.

In supplemental briefing, defendant requests that we remand his case to the trial court for reconsideration of his petition for resentencing in light of the newly enacted

12

standard for dangerousness under Proposition 47. He contends the trial court must apply this new definition of "unreasonable risk of danger to public safety" in evaluating his dangerousness on remand. The Attorney General argues that the new definition applies only to petitions filed under Proposition 47, not Proposition 36. She further argues that the new definition does not apply retroactively to petitions adjudicated prior to the enactment of Proposition 47.

1. *Section 1170.18 Does Not Apply Retroactively to Defendant's Petition*

Defendant contends Proposition 47's definition of dangerousness applies retroactively to his petition based on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). We conclude the new standard enacted under Proposition 47 does not apply retroactively to defendant's petition.

The general rule is that statutes only apply prospectively unless otherwise stated in the language of the statute or retroactive application is clearly indicated by legislative intent. The Penal Code itself says, "No part of this Code is retroactive, unless expressly so declared." (§ 3.) The California Supreme Court has said that this rule, found in various California Codes, codifies " 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citation.] In applying this principle, we have been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes. [Citations.] Consequently, ' "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319-320 (*Brown*).) And, "[i]n interpreting a voter initiative, we apply the same principles that govern our construction of a statute." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.) Because section 1170.18 contains no language asserting its retroactivity, and because no other extrinsic sources show a clear intent to apply the

13

statute retroactively, we start with the presumption that section 1170.18 was intended to act prospectively.

*Estrada, supra,* created an "important," but "contextually specific qualification" to the default rule of nonretroactive application. (*Brown*, *supra*, 54 Cal.4th at p. 323.) In *Brown*, the Supreme Court explained its prior holding in *Estrada* as follows: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*Ibid.*) "[T]he rule and logic of *Estrada* is specifically directed to a statute that represents ' "a legislative mitigation of the *penalty for a particular crime*" ' . . . ." (*Id.* at p. 325, italics in original.) The newly enacted definition of dangerousness in section 1170.18, however, does not reduce the penalty for a particular crime. Instead, a petitioner under Proposition 36 may or may not enjoy a reduced sentence, depending on numerous factors unrelated to the offense underlying the challenged sentence.

We conclude that application of the *Estrada* exception to the new definition of dangerousness under section 1170.18 would exceed the bounds of the exception and would violate the default rule of nonretroactive operation of statutes under section 3. Because defendant's petition was adjudicated prior to the enactment of Proposition 47, the new definition does not apply to his petition. Having found the new definition inapplicable, we need not consider the issue of whether the new definition applies to the standard of dangerousness set forth in subdivision (f) of section 1170.126.

### III. DISPOSITION

The judgment is affirmed.

14

_____

Márquez, J.

WE CONCUR:

_____

 Rushing, P. J.

_____

Grover, J.

<u>People v. Franklin</u>
No. H040085