Filed 5/4/22  P. v. Stojsich CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074739 |
| v. | (Super.Ct.No. FWV1403479) |
| JEFFREY JOVON STOJSICH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson

Uhler, Judge.  Conditionally affirmed and remanded with directions.

The Law Office of Christopher Nalls and Christopher Nalls, under appointment by

the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant

Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and

Felicity A. Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jeffrey Jovon Stojsich killed a "snitch" and was

convicted of murder.  He appeals, contending that because the victim was someone

1

whose snitching helped put Stojsich's brother in prison, the killing was personally motivated, and thus he lacked the specific intent necessary for a gang enhancement under Penal Code section 186.22, subdivision (b).[1] Stojsich also requests that we review the materials the trial court considered in camera pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), wherein Stojsich sought discoverable personnel records of a peace officer who testified as a street gang expert at trial. The trial court did not disclose any records as a result of the *Pitchess* motion.

In our original opinion, filed September 20, 2021, we affirmed the gang enhancement. Our Supreme Court then granted Stojsich's petition for review and directed us to vacate the opinion and reconsider the cause in light of Assembly Bill 333 (2021-2022 Reg. Session) (Assembly Bill 333). As relevant here, Assembly Bill 333 changed the requirements for a section 186.22 gang enhancement, effective on January 1, 2022, before this judgment would be final. We vacated the opinion on December 17, 2021 and requested supplemental briefing.

We now conclude that the gang enhancement must be vacated in light of Assembly Bill 333 and remand to allow the People an opportunity to retry the alleged gang enhancement under the law as amended by Assembly Bill 333.

Our conclusion as to the *Pitchess* review remains unchanged: we cannot conduct a *Pitchess* review at this time. It is apparent that our record does not include all the documents that the trial court considered during the *Pitchess* motion. Accordingly, on

---

[1] Undesignated statutory references are to the Penal Code.

2

remand, the trial court may hold an additional hearing to settle the record, after which we may determine whether the trial court abused its discretion in refusing to disclose any records.

## I. BACKGROUND

### A. *Factual History*

On August 26, 2014, Stojsich and a friend named John Rodriguez went to a Circle K convenience store to pick up cigarettes and other items. When they arrived, they saw Jeremy Stroud and his wife Danielle White sitting outside on a curb. After greeting one another, Stroud said he and White were looking for crystal meth, and Rodriguez said he could supply some later that day.

When Stojsich and Rodriguez returned to Stojsich's home, they and others began conversing about Stroud. Stojsich had stated then and other times that Stroud had "snitched" on Stojsich's older brother Robert Eddie some time ago (specifically, that Stroud had testified against Eddie), which led to Eddie being incarcerated. Because of that, Stojsich said Stroud "had to go," which Rodriguez understood as meaning that Stroud needed to be killed.

Stojsich and Rodriguez left to go meet Stroud and White later that day. While driving to a gas station, Stojsich and Rodriguez saw Stroud and White walking on the street. Stroud and White got into the vehicle, and Stojsich and Rodriguez drove them to another person's house, where Rodriguez sold Stroud the crystal meth. Afterward, the group drove around for what "seemed like a long time" to Rodriguez. During that time,

Stroud told Stojsich that Stojsich "had it all wrong [with] what happened with his brother."

Stojsich and Rodriguez drove Stroud and White to a school parking lot. According to Rodriguez's testimony at trial, Stroud and White agreed to be dropped off at the school parking lot, but Stojsich and Rodriguez had an "ulterior motive," which was to "harm" Stroud. Stojsich, Rodriguez, and Stroud exited the car, and Stojsich and Stroud went toward the trunk while Rodriguez went toward the front. Because the car's child lock was engaged, White could not get out. According to Rodriguez, Stojsich and Stroud began "getting aggressive." Stojsich held Stroud in a chokehold and stabbed him in the neck and face. Rodriguez opened White's door, took her hand, punched her in the face, and then kicked her repeatedly while she was on the ground, calling her and Stroud snitches. Stroud ultimately died at the hospital from the wounds.

*B. Gang Testimony*

At trial, Sergeant Brad Bonnet testified as an expert on criminal street gangs. Bonnet opined that Stojsich, Rodriguez, and Eddie were all members of a gang called the West End Peckerwoods.[2] Bonnet stated that "[o]ne of the biggest rules in a specific street gang is that you don't tell on another member. This doesn't just apply to members of the gang. This applies to essentially everybody."

Rodriguez testified that a Peckerwood is a foot soldier for two white prison gangs, the Aryan Brotherhood and the Nazi Low Riders. According to Rodriguez, a

[2] On appeal, Stojsich does not challenge Bonnet's opinion that each of these individuals is a member of the West End Peckerwoods gang.

4

Peckerwood who took a snitch's "wing" (i.e., stopped them from breathing by "any means possible") would be "praised by the higher ups" in the organizations both in prison and on the streets.

When presented with hypothetical facts based on Stroud's murder, Bonnet opined that the hypothetical killing would be for the benefit of and in association with a criminal street gang. Bonnet stated, among other things, that the participation of a second member of the same gang showed the hypothetical killing was in association with a criminal street gang. According to Bonnet, having a second member from the same gang participate meant additional assistance in accomplishing the murder, and also that each could rely on the other not to "say anything about the murder."

*C. Charges and Verdict*

Although both Stojsich and Rodriguez were charged with murder and other crimes, Rodriguez agreed to testify against Stojsich as part of a plea bargain, and only a gang enhancement under section 186.22, subdivision (b) attached to the murder count is at issue here.[3]

---

[3] Stojsich and Rodriguez were each charged with murder (§ 187, subd. (a); count 1), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). Gang enhancements pursuant to section 186.22, subdivision (b)(1)(C) were alleged as to counts 1 and 2 for both Stojsich and Rodriguez, and personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)) was alleged as to count 1 for Stojsich. The People also alleged two prison prior enhancements pursuant to section 667.5, subdivision (b) for both Stojsich and Rodriguez. Rodriguez testified during trial that he had entered into a plea where he would serve 17 years for the charges in exchange for his testimony against Stojsich. During trial, the trial court dismissed counts 2 and 3 on the People's motion, and it also dismissed the prison prior enhancements due to a change in law.

Following the first phase of a bifurcated trial, the jury found Stojsich guilty of second degree murder. It also found the personal use of a deadly and dangerous weapon allegation true. Following the second phase of trial, the jury found the gang enhancement allegation true. The trial court sentenced Stojsich to 15 years to life for the murder and one year for the personal use enhancement.

## II. DISCUSSION

Stojsich contends that there was insufficient evidence for the jury to find that he had the "'specific intent to promote, further, or assist in any criminal conduct by gang members,'" which the gang enhancement requires, because he murdered Stroud out of personal revenge.[4] Based on supplemental briefing following our Supreme Court's direction to reconsider the cause in light of Assembly Bill 333, Stojsich also contends that the jury instructions given are deficient under current law. Additionally, Stojsich requests that we review the files the trial court considered in camera as part of his *Pitchess* motion relating to the gang expert's personnel records. We agree that the gang

---

[4] Stojsich's gang enhancement is attached to a felony punishable by life in prison, so the punishment imposed by the gang enhancement is that his minimum parole eligibility term is 15 years. (§ 186.22, subd. (b)(5).) However, as our Supreme Court observed in *People v. Lopez* (2005) 34 Cal.4th 1002, second degree murder has a minimum parole eligibility term of 15 years even without a gang enhancement, and thus the gang enhancement "ha[s] no practical effect . . . for second degree murderers." (*Id.* at p. 1009, citing § 190, subd. (a).) This might suggest that the legality of the gang enhancement is a moot point. However, we consider the issue because the true finding under section 186.22, subdivision (b)(5) "'is a factor that may be considered . . . when determining a defendant's release date, even if it does not extend the minimum parole date per se.'" (*Lopez*, *supra*, at p. 1009.)

enhancement must be vacated and remand to allow additional proceedings on both the gang enhancement and the *Pitchess* motion.

    *A.  Assembly Bill 333*

    Section 186.22 enhances the punishment of a person convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1), (4).)  This gang enhancement relies on the definition of "criminal street gang" as defined in section 186.22, subdivision (f).

    Assembly Bill 333 narrowed the definition of "criminal street gang."  First, under Assembly Bill 333, the term has been narrowed from "an ongoing organization, *organized association or group* of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity" (former § 186.22, subd. (f), italics added) to "an ongoing, *organized association or group* of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity" (§ 186.22, subd. (f), italics added).  Second, Assembly Bill 333 raised the bar for proving a "pattern of criminal gang activity":  (1) predicate offenses now must be proven to have "commonly benefitted a criminal street gang, and the common benefit from the offense[s] is more than reputational"; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must have been committed by two or more "members" of the gang, as opposed to any persons; (4) the currently charged offense no longer counts

7

as a predicate offense; and (5) the list of qualifying predicate offenses is shortened. (Assem. Bill 333, § 3, revised § 186.22, subd. (e)(1)-(2).)

Assembly Bill 333's ameliorative amendments to section 186.22 apply retroactively to Stojsich because his judgment will not be final when the amendments take effect. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344.) Moreover, Stojsich may be able to benefit from those changes. Here, although the parties stipulated to Stojsich and other West End Peckerwoods' prior offenses{RT 575-577, 598-599}, there was no stipulation—and no evidence—that those offenses "commonly benefited a criminal street gang," as now required under Assembly Bill 333. (§ 186.22, subd. (e)(1).) For example, the parties stipulated that Stojsich was twice previously convicted of possession of methamphetamine for sale and that Brian Eterovich (whom the People's street gang expert opined was a West End Peckerwood{RT 577}) was once previously convicted of the same.{RT 599} (See § 186.22, subd. (e)(1)(D) [possession of controlled substance for sale is a crime that can prove a "pattern of gang activity"].) There is no reason to conclude, however, that when a gang member intends to sell drugs, he necessarily does so for the gang's benefit and not his own.

Accordingly, it does not matter, as the People contend, that their gang expert opined that the West End Peckerwoods collectively engage in a pattern of criminal activity.{People's Supp. Brief 15; RT 576 ["Q And in your opinion, have West End Peckerwoods either individually or collectively engaged in a pattern of criminal activity? [¶] A Yes, collectively."]} What it means to have engaged in a pattern of gang or

8

criminal activity has changed.  Additionally, we need not settle the other interpretive issues concerning section 186.22 as amended that the parties raise.{See People's Supp. Brief 16, 18}  We find that the jury instructions on the gang enhancement, though valid at the time they were given, are now deficient, and that such an error was not harmless beyond a reasonable doubt.  (See *People v. Sek* (2022) 74 Cal.App.5th 657, 668-669 [applying harmless error]; *Chapman v. California* (1967) 386 U.S. 18.)  We remand to allow the prosecution an opportunity to retry Stojsich on the gang enhancement under the law as amended by Assembly Bill 333.

> ### B.  Pitchess *Review*

For many years "our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense."  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225 (*Mooc*).)  *Pitchess* "and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial."  (*Id.* at p. 1227.)  After a party seeking files under *Pitchess* demonstrates good cause for the discovery and the trial court conducts an in camera review, "a court has discretion regarding which documents, if any, it will disclose to a movant."  (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 43.)  We review for abuse of discretion.  (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

Here, before trial in 2019, the trial court noted in open court that it had conducted an in camera review following an "informal *Pitchess* motion" by Stojsich with regard to Bonnet, the prosecution's criminal street gang expert. The trial court stated that it had "reviewed all personal[5] records belonging to" Bonnet and that there was "nothing to disclose" to Stojsich in response to the motion. The sealed transcript from that in camera review indicates that the trial court reviewed several types of documents and records relating to Bonnet.

While briefing was underway in this court, Stojsich requested that the record on appeal be augmented to include the *Pitchess* materials the trial court reviewed. We granted the request and ordered the trial court to hold a hearing to "'settle the record'" if the confidential materials were not already available in the trial court's file. (See *Mooc*, *supra*, 26 Cal.4th at p. 1231 [appellate court may remand case "to the trial court with directions to hold a hearing to augment the record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion"].)

The trial court held such a hearing in 2021, certified that the materials presented before it then were the records it reviewed at the hearing in 2019, and had those confidential materials sent to this court.

In reviewing the record, it has become apparent to us that not all of the materials the trial court reviewed in 2019 were resubmitted at the 2021 hearing, and the trial court's certification of the record was erroneous. At the 2019 hearing, for which we have a

---

**5** We presume the trial court said "personnel" instead of "personal," or at least that it intended to.

10

sealed transcript, the trial court diligently noted what each type of document that was contained in each presented folder was as it reviewed Bonnet's personnel file. (See *Mooc*, *supra*, 26 Cal.4th at p. 1229 [trial court may "state for the record what documents it examined"].) Most of the types of documents the trial court noted for the record in 2019, however, are nowhere to be found in the materials this court received following the 2021 hearing.

Without all of the documents the trial court reviewed in 2019, we are unable to provide Stojsich meaningful appellate review of the trial court's decision not to disclose any documents relating to Bonnet. A "complete and accurate appellate record is needed to effectuate the rights to meaningful appellate review." (*People v. Townsel* (2016) 63 Cal.4th 25, 68 (*Townsel*).)

In *Townsel*, our Supreme Court held that the lack of a full *Pitchess* record on appeal was harmless error, despite the impairment such a circumstance would have for review. (*Townsel*, *supra*, 63 Cal.4th at pp. 69-71.) However, it did so only after finding that the materials had been "lost" despite "exhaustive efforts" to locate them. (*Id.* at pp. 68-69.) Our situation is different, so we decline to decide whether the omission of the complete file here would constitute harmless error. Specifically, we have no reason to believe that the missing materials are irretrievably lost, only that they were not resubmitted for the 2021 hearing.

Accordingly, on remand, the trial court may hold a second hearing to settle the record so that the remaining files it reviewed in 2019 may be resubmitted, certified, and sent to this court.

## III.  DISPOSITION

The murder conviction is conditionally affirmed.  The matter is remanded for the trial court to (1) strike the gang enhancement allegation under section 186.22; (2) provide the prosecution an opportunity to retry the gang enhancement under the law as amended by Assembly Bill 333; (3) if Stojsich requests, hold a second hearing to settle the record for *Pitchess* review; and (4) if the prosecution elects not to retry the gang enhancement allegation, or at the conclusion of retrial, resentence Stojsich either by reinstating his previous sentence or by imposing new sentence without the enhancement.  If the court holds a second hearing to settle the record, the clerk of the superior court, appeals division, shall, on or before 35 days from the date of the hearing, transmit to this court in a confidential envelope a copy of the certified items received by the superior court at such hearing, at which time this court will take further action.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.